ELIAS C. STEWARD TO THE USE OF CHARLES W. GRANTHAM, Appellant, *v.* DAVID THOMAS, Adm'r, &c., Respondents.

*Evidence—Vendor—Hearsay.*—After a vendor has parted with his property he has no more power to impress the title, either by his acts or delarations, than a mere stranger. Such declarations are only hearsay evidence.

*Fraud—Possession—Evidence.*—The possession after a sale by a vendor of real property is not presumptive evidence of fraud.

*Appeal from St. Charles Circuit Court.*

*E. A. Lewis* and *W. A. Alexander*, for appellants.

I. The deed of trust of May, 1857, ought not to have been admitted in evidence. Its execution was six months prior to the first transaction between the two Granthams, and it had no connection with any matter whatever involved in this controversy. Its presence was calculated to mislead the jury and make them couple it with matters to which it was essentially foreign, to the prejudice of the plaintiff's rights.

II. The statements of T. P. Grantham were only hearsay, and incompetent testimony for any purpose. No evidence appears in the whole case, even remotely connecting Charles

W. Grantham with any supposed fraudulent intent on the part of his father. Nor was any proper foundation laid for the introduction of the statements of T. P. Grantham, by way of attack upon his credibility as a witness; for no question was asked him about those statements until after their admission in evidence; and even then, his answers were not such as could have authorized their introduction under any circumstances. The court erred, therefore, both in admitting the testimony and in refusing to give the 3d instruction asked for by plaintiff. (Howard v. Coshow, 35 Mo. 118; Reed v. Pelletier, 28 Mo. 173, 177; Whitney v. Ferris, 10 Johns. 66; Buckman v. Barnum, 15 Conn. 68; Commonwealth v. Eberle, 3 Serg. & R. 9, 16, 19; Patton v. Freeman, Coxe, 113, 115; Reichart v. Castator, 5 Bin. 109, 113.)

III. The first instruction given for defendants is erroneous. 1. It confounds possession of "the farm upon which the wheat grew," with possession of the wheat itself, between which there is a very material distinction. 2. It presents hypotheses of fact, touching which not a particle of evidence was offered; there was no evidence even tending to show that T. P. Grantham kept possession of the wheat fan, nor any that he "fed the hay to his stock" after the sale to Charles W. Grantham.

IV. The whole instruction raises false issues, and is inevitably adapted to the misleading of the jury. It proceeds upon the false notion, that because T. P. Grantham remained upon the farm where the property was which he sold to Charles, therefore Charles never acquired any possession at all of the property, although he also lived upon the same farm, and exercised all possible acts of ownership over the property in question. (R. C. 1855, p. 805, § 10.)

V. The 2d instruction given for defendants is erroneous. It instructs the jury to find generally for defendants, if the bill of sale of November, 1857, was void for fraud; thus ignoring and in effect denying all the right which the beneficial plaintiff may have had in the crop of tobacco raised by himself, and never included in that bill of sale.

VI. The 3d instruction for defendants is erroneous. 1. Like the 1st, it confuses the idea of exclusive possession and of a joint occupancy or residence upon the premises. 2. It is calculated to mislead the jury as to the effect of the acts of T. P. Grantham in paying hands, &c., touching whether they were done in his own name or merely as agent for Charles, as testified to by himself. 3. It, in effect, directs the jury to find the continued possession by T. P. Grantham proven by facts which only tend to prove it, and keeps out of view all those qualifying circumstances with which the evidence abounds, and which should not be lost sight of in any instruction on that point. 4. Like the 2d instruction it erroneously tests the plaintiff's right to all the property by the validity of the bill of sale of only a part. 5. It requires the plaintiff absolutely to show that the sale of November, 1857, was not made with any fraudulent intent, and denies him those legal rights which would equally flow from his ignorance of the fraudulent intent, if such existed. (Little v. Eddy, 14 Mo. 160.)

*Dyer*, *King*, and *Krekel*, for respondent.

DRYDEN, Judge, delivered the opinion of the court.

The defendant Thomas, having an execution against one Taliaferro P. Grantham, caused Stewart the sheriff of St. Charles county, to levy the same on a lot of wheat containing about seven hundred bushels, three stacks of timothy hay, and a quantity of tobacco, as the property of said Taliaferro P. The property having been claimed by Charles W. Grantham the relator, a sheriff's jury was called to try the question of ownership, who found for the claimant. Thomas, the creditor, thereupon indemnified the sheriff, who proceeded and sold under the execution. The present suit was brought on the bond of indemnity against Thomas and his securities. The only issue made by the pleadings is as to Charles W. Grantham's ownership of the property seized and sold by the sheriff. The case was tried by a jury, re-

sulting in a verdict and judgment for the defendants below, from which the plaintiff has appealed to this court.

The evidence showed that the crop of wheat, of which the wheat in dispute was the fruit, was sown by Taliaferro P. Grantham for himself, in the autumn of 1857, on a tract of land on which he and his family resided, the title to which was in his wife. The plaintiff read a document executed by Taliaferro P. Grantham, dated the 14th day of November, 1857, purporting to convey to Charles W. the said crop of wheat then growing, together with said Taliaferro's portion of a crop of corn, a stack of hay, and a wheat fan of said Taliaferro P., for the expressed consideration of two hundred and fifty dollars, recited therein to have been paid; and also gave evidence, aside from the recital, tending to prove payment of said purchase price.

It further appeared that the hay and tobacco in controversy, as well as the wheat, were grown on the farm above mentioned, and were the products of the year 1858; and that during that year Taliaferro P. and his family still continued to reside on the farm; Charles W., who was a son of Taliaferro P., residing with them as a member of the family. The evidence further tended to show that Charles W. cultivated the farm during the year 1858, for himself and at his own expense, using however for that purpose, as occasion required, the animals and implements of Taliaferro P., and harvested and claimed the crops grown as his own. There was nothing in the case showing on what terms or conditions Charles W. was permitted to cultivate the land and take to himself its products. The defendants gave in evidence the judgment and execution on which the property in controversy was seized and sold. The judgment was rendered the 17th of November, 1857, for the sum of one thousand and eighty-four dollars and forty-one cents, in a suit on a note the date of which is not shown.

In the progress of the trial the defendants were permitted, against the objection of the plaintiff, to read a deed of trust from Taliaferro P. Grantham to John J. Hitch, executed

14—VOL. XXXV.

and duly acknowledged and recorded in May of 1857. This deed recited a long list of debts owing by the grantor, and, for the avowed purpose of securing the payment of them, conveyed several town lots in the town of Flint Hill, in St. Charles county, and his interest in numerous specific articles of personal property, with power of sale by the trustee to pay the preferred debts in case of default of payment when they should become due.

We have not been favored with an argument or brief in the case on behalf of the respondents, and are therefore left uninformed as to the reason for the introduction of this deed in evidence. The issue involved the *bona fides* of the sale made by Taliaferro to Charles, in November. What light the previous deed of trust could shed upon the question of the fairness of this subsequent sale to another and different party, or what legitimate purpose could be subserved by its introduction in evidence, it is impossible to see. There is no suggestion, either here or in the record of the court below, of the unfairness of the deed; but if it were admitted to be fraudulent (the appellant not claiming under it), its infirmity ought not to prejudice the rights of the appellant acquired under another and totally distinct transaction. Each distinct transaction must be judged by its own circumstances, and must stand or fall by its own merits. That the presence of the deed before the jury, whatever may have been the purpose of its introduction, was almost certainly prejudicial to the appellant's case, scarcely admits of question.

In the further progress of the trial a witness, Shelteal Ball, was permitted, at the instance of the respondents, to detail a conversation held by him with Taliaferro P. Grantham, in which the latter made statements tending to show that it was his purpose not to pay the judgment of the respondent, Thomas ; and another witness, George Ryan, was permitted to give a conversation had between him and said Taliaferro, in which the latter claimed the ownership of the wheat in controversy. Charles Grantham was not present at either

conversation; both were held, not only after the acquisition of whatever right Charles had in the property in controversy, but even after the levy of the execution and trial of the right of property.

The purpose of the introduction of these conversations in evidence, was to prove that the transfer from Taliaferro to Charles was merely colorable, and made to defeat the collection of Thomas, the respondent's debt; but there was nothing in the circumstances of the case that made them competent evidence against Charles. The declarations of Taliaferro in these conversations were made at a period of time so remote from the time of the obnoxious transfer, as to preclude any pretence that they were a part of the *res gestæ*. They were made in the absence of Charles, and therefore, as he had no opportunity of gainsaying their truth, their introduction in evidence cannot be put upon the ground of his admissions. After a vendor has parted with his property, he has no more power to impress the title, by either his acts or his declarations, than a mere stranger; such declarations are only hearsay, and cannot affect the title of the vendee.

At the conclusion of the evidence, the court instructed the jury, at the instance of the respondents, as follows, viz.: "1. If the jury believe from the evidence that Taliaferro P. Grantham remained in possession of the farm upon which the wheat grew, and also kept possession of the wheat fan and fed the hay to his stock after the sale to Charles W. Grantham, it is presumptive evidence of fraud, and is conclusive evidence, unless Charles W. Grantham has shown to your satisfaction that the sale was made in good faith. 2. If the jury believe that the bill of sale read in evidence by the plaintiff, from Taliaferro P. Grantham to Charles W. Grantham, was made with intent to hinder, delay or defraud David Thoms, administrator of the estate of James Ball, deceased, in the collection of his debt against the said T. P. Grantham, and that Charles W. Grantham at the time he accepted the bill of sale knew of T. P. Grantham's intent, then you will find a verdict for the defendants, although you

believe that the said Charles W. Grantham paid the said T. P. Grantham for same, and that he took possession of the farm upon which the wheat grew, and cultivated the said farm for the year 1858. 3. If the jury shall find from the testimony, that T. P. Grantham exercised control over the farm on which the wheat, corn and hay crops in controversy were growing, by hiring and paying hands to work in the tobacco and corn crops, by employing and paying hands for the purpose of harvesting, by making arrangements with a joint owner of a reaper to use the same in cutting the wheat, such acts tend to show that T. P. Grantham was in possession of the farm and crops, and the jury is authorized so to find ; and if the jury shall find said T. P. Grantham to have been in possession of the farm and crops aforesaid, then the sale to Charles W. Grantham by T. P. Grantham, of the corn, wheat and hay crops, is fraudulent, as against creditors of T. P. Grantham, and the said Charles W. Grantham must prove to the satisfaction of the jury that the sale to him was made in good faith and without any intention of defrauding, hindering or delaying the creditors of said T. P. Grantham."

The 1st instruction is objectionable, in that it is predicated upon a state of facts wholly unsupported by the evidence. It declares the law to be that the possession of the wheat fan and of the farm on which the wheat grew, and the consumption of the hay by Taliaferro after the sale to Charles, was presumptive evidence of fraud. As to the possession of the wheat fan, or as to the consumption of the hay by Taliaferro after the sale from him to Charles, there was not a particle of evidence in the case. And as to the continuing in the possession of the farm by Taliaferro after the sale of the growing crop of wheat, the law raises no presumption of fraud therefrom, as the instruction supposes.

Where the *bona fides* of a conveyance of land is in question, the circumstance that the grantor continued in possession after the sale is proper to be submitted to the jury for their consideration as to whether the transaction was fraudulent in fact ; but it will not do to say that, as a matter of law,

the grantor's possession is in such case presumptively fraudulent. This doctrine is confined in its application to sales of goods and chattels. (R. C. 1855, § 10, p. 805, title, "fraudulent conveyances.")

The hay and tobacco in controversy, as has been seen, were the products of 1858, and in nowise involved in the sale by which the growing wheat was disposed of. So far, then, as the hay and tobacco were concerned, the direction to the jury in the second instruction, that their verdict was to be determined by the question of the intention of that sale was manifestly erroneous.

The third instruction asserts that the continuation of possession of the farm by Taliaferro P. Grantham, after the sale of the growing crop of wheat to Charles W., renders the sale of the wheat presumptively fraudulent, and, as has been seen in our examination of the first instruction, is erroneous.

The other judges concurring, the judgment will be reversed and the cause remanded. The judgment is reversed.