WILLIAM C. FARRAR, Trustee˙ of ELIZA McKEE, Respondent, v. LOUIS J. SNYDER *et al.*, Appellants.

St. Louis Court of Appeals, May 8, 1888.

1. EVIDENCE, IRRELEVANT.—In an action of replevin where the plaintiff claims under a bill of sale from an insolvent debtor firm, evidence offered by the defendants, who were attaching creditors, to show that they had no knowledge of a chattel mortgage executed by the debtors to the plaintiff's beneficiary prior to the bill of sale is irrelevant and properly excluded.

2. EVIDENCE—DECLARATIONS OF VENDORS AFTER SALE.—It is not admissible to prove the declarations or admissions of vendors, made after the sale and transfer of possession, to impeach the title of their vendee.

3. EVIDENCE—CONSPIRACY.—Where there is no evidence of conspiracy between the plaintiff or his beneficiary and his vendors against the rights of the defendants as creditors of the vendors, it is not competent for the defendants to introduce evidence showing what disposition was made by the vendors of certain moneys in their possession.

APPEAL from the St. Louis Circuit Court, HON. DANIEL DILLON, Judge.

*Affirmed.* ·

DAVIS & DAVIS, for the appellants: The testimony of Mr. Hazzard as to his knowledge of existence of chattel mortgage should have been admitted. The testimony of Mr. Hazzard and Davis as to conversations with and declarations of vendors, while they were in possession of the property, was competent. *Burgert v. Borchert*, 50 Mo. 80 ; Greenl. on Evid. [14 Ed.] sec. 113 ; *Boyd v. Jones*, 60 Mo. 454 ; *Cordes v. Strasberger*, 8 Mo. App. 61. The testimony of Mr. Sage as to disposition of the four hundred dollars made by him should have been admitted. *State to use v. Engelke*, 20 Mo. App. 21.

H. A. Clover and Edmond A. B. Garesché, for the respondent.

Peers, J., delivered the opinion of the court.

This is an action of replevin originating in the circuit court of the city of St. Louis.

It seems that Bailey, Sage & Company, in the year 1886, were engaged in the stationery and printing business in St. Louis, and, being unable to command sufficient capital to run their business in competition with other concerns in the city, got considerably behind in their accounts. They attempted to raise money, and in October, 1886, applied to Mrs. Eliza McKee, a lady of large means, for a loan of three thousand dollars, which they procured by giving their four notes, due in one, two, three, and four years, bearing interest at the rate of six per cent. per annum. At the time of the execution of these notes, they also executed and delivered to her a chattel mortgage on their fixtures then in the store occupied by them. This mortgage was never recorded. The money thus obtained was used by Bailey, Sage & Company in purchasing machinery for their business, paying their several creditors, among whom were the present appellants, and who received five or six hundred dollars on a debt due to them.

The business of Bailey, Sage & Company ran along smoothly until May, 1887, when the building occupied by them fell in, destroying the greater part of the stock and fixtures of the firm, and damaging them to such an extent that they were unable to further carry on their business. They took from the ruins such of the stock as was not totally destroyed, and after making an invoice called a meeting of their creditors, explained to them their condition, and asked an extension of one, two, three, and four years, saying at the time that they would be unable to secure their paper should the extension be granted. All of the creditors refused to grant the extension asked except Mrs. McKee, who was represented at

the meeting of the creditors by Mr. Farrar, and who was willing, if the arrangement could be made with the other creditors, to take her chances with the rest. The meeting adjourned without any settlement being effected, whereupon, Bailey, Sage & Company, feeling called upon to protect Mrs. McKee, executed a bill of sale to Farrar, trustee for Mrs. McKee, conveying to her all of their assets, the total invoice value of which was twenty-six hundred dollars, and the actual market value of which was about thirteen hundred dollars, together with certain book accounts due and owing to them. The stock and fixtures were subsequently sold out by Farrar and he realized from them and the book accounts, from seventeen to eighteen hundred dollars, or about sixty per cent. of the McKee debt.

Farrar took possession under his bill of sale, put a man in charge of the business, and changed the letter-heads, orders, etc., so as to read "Wm. C. Farrar, trustee, successor to Bailey, Sage & Company." The business was advertised for sale and on the same day the bill of sale was handed to a Mr. Anderson, who was told to have it recorded. The giving of the bill of sale coming to the attention of William T. Hazzard, the then representative of the appellants, through the Bradstreet agency sheet, appellants sued out an attachment which was levied on the goods mentioned in the bill of sale, upon which the respondent replevied the goods, and after a trial in the circuit court, resulting in a verdict and judgment for the plaintiff, the case comes here by appeal.

The only point made on which we are asked to reverse the case is as to the admissibility of the following evidence:

"William T. Hazzard testified:

Q. "I will ask you who extended Bailey, Sage & Company this credit of seven hundred and seventeen dollars, under which this suit was brought?

A. "I did.

Q. "Did you know at the time you extended this

credit of seven hundred and seventeen dollars, that there was a chattel mortgage on the assets of Bailey, Sage & Company, given to Elizabeth McKee for the sum of three thousand dollars?

"Plaintiff's counsel objects to question and objection sustained.

Q. "Did you go down to the office of Bailey, Sage & Company, after the thirteenth day of July?

A. "I went down there on the day that that bill of sale was noted of record on the agency sheet; I don't remember the day.

Q. "What did you see down there?

A. "I saw Mr. Bailey and Mr. Sage and Mr. Anderson in charge.

Q. "What was Mr. Bailey doing

A. "Mr. Bailey was apparently busy about his usual work.

Q. "Pretty much as he had been doing before?

A. "About the same character of work

Q. "Mr. Sage?

A. "Mr. Sage was apparently doing the same thing.

Q. "And Mr. Anderson?

A. "And Mr. Anderson.

Q. "What change was there in the signs down there?

A. "I saw none.

Q. "The same sign had been there since they had been in business?

A. "The same sign.

Q. "Did you have any conversation with either of them, either Bailey or Sage, in relation to the bill of sale?

"Objected to and objection sustained.

"Henry B. Davis testified: On the thirteenth of July, about half-past eight o'clock in the morning, I went down to the office of Bailey, Sage & Company, under the Republican building, and found the office in the condition that it had been when I had been there

before the fifth of July, with the sign in front and Henry V. Bailey in the office. I asked Mr. Bailey what was the meaning of the bill of sale, and Mr. Bailey said—

"Testimony objected to and objection sustained.

"Mr. Sage's testimony:

Q. "Now you had eight hundred dollars in cash when you called your creditors' meeting?

A. "Well, there was some amount there, either seven hundred or eight hundred dollars.

Q. "Isn't it a fact, before you called your meeting of creditors, you had checked out your eight hundred dollars, and divided it between you and Mr. Bailey?

A. "I believe it was prior to that.

Q. "What have you done with your half of it?

"Plaintiff's counsel objects and objection sustained."

## I.

Appellants insist that the testimony of Mr. Hazzard as to his knowledge of the existence of the chattel mortgage should have been admitted, but upon what theory it does not appear. As an abstract proposition, we are unable to discover how any light could be thrown upon the issues of the case by permitting Mr. Hazzard to testify that he never knew of the chattel mortgage, given by Bailey, Sage & Company, to Mrs. McKee. Hazzard's knowledge of the fact that there was such a mortgage could not affect the issues one way or the other, for the reason that the plaintiff did not claim under that paper but under a subsequent bill of sale. We think the trial court properly sustained the objections to the evidence on the ground that it was immaterial.

## II.

Was the testimony of Mr. Hazzard and Mr. Davis as to conversations with and declarations of vendors while they were in possession of the property competent? This point must be considered in connection with

all the evidence offered in the case as the same is preserved in the record before us. As a proposition of law, there can be no question but that the declarations of vendors of personal property while they were in possession, explaining their title or the character of their possession, is receivable in evidence as against them, and may, under certain circumstances, be admissible even against those claiming under them. *Boyd v. Jones*, 60 Mo. 454. However, as a condition precedent to the introduction of any evidence as to the declarations of the vendors, after sale, it was incumbent upon defendant to first establish that the vendors were in possession. The declarations and admissions that were rejected in evidence in this case were not made until some time after the vendee had taken possession of the goods under the bill of sale. The vendee took possession in this case on the fifth day of July, while the conversation which the court excluded took place on the thirteenth day of July. The vendors then had no control of the goods, and they did not have such an interest in the goods as entitled them to make any declarations or admissions that could affect the rights of the vendee. Whatever they may have said was mere hearsay and not competent evidence against the plaintiff who held and was in possession under the contract of sale. The evidence discloses that the whole business had been transacted in the name of Wm. C. Farrar, trustee, successor to Bailey, Sage & Company, and Anderson was in possession as the representative of Farrar. All the business done by Anderson was in the name of Farrar, trustee, successor to Bailey, Sage & Company, and as the evidence shows, this was shown by the stamps on the orders and letter-heads used in conducting the business, so that persons who were accustomed to dealing with the old firm were apprised of the fact that there had been an actual change in the possession of the property. *Steward to use v. Thomas, Adm'r*, 35 Mo. 202; *Weinrich & Co. v. Porter*, 47 Mo. 293.

The old sign which read "Printing and Stationery" was allowed to remain, but there was no evidence in any part of the record that the name of either Bailey or Sage appeared any where in or about the business after possession was taken by Farrar. The change must have been patent to Mr. Hazzard, for in his testimony he says he went to the office of Bailey, Sage & Company, after the thirteenth of July, and he found there Mr. Bailey, Mr. Sage, and Mr. Anderson in charge; Bailey and Sage were retained because, as Mr. Farrar in his testimony says, *he* knew nothing about the printing and stationery business, and it was, therefore, necessary for him to keep them until such time as he could wind it up.

There is no reason why Farrar should not have retained in his service in and about the property either Bailey or Sage or both in the same manner as any other employes. *State to use v. Donelly*, 9 Mo. App. 519; *Claflin v. Rosenberg*, 42 Mo. 439.

In view, therefore, of the fact that Mr. Farrar had previously testified that he had taken possession on the fifth, and had placed Mr. Anderson in charge, and in view of the further fact that an open and notorious change had been made in the method of transacting the business, and that the change was so patent as to be observed by Mr. Hazzard at once upon his calling at the store, any declarations which either Mr. Bailey or Mr. Sage might have made in the absence of the vendee or her trustee were clearly incompetent, and the objection to them was, therefore, properly sustained. *Albert v. Besel*, 88 Mo. 154.

### III.

We are of opinion that the trial court committed no error in refusing to permit Mr. Sage to testify as to the disposition he made of the four hundred dollars checked out of bank prior to the meeting of the creditors of Bailey, Sage & Company. Under that part of the

answer where the defendants charged "that in pursuance of said fraudulent, wicked, and unlawful conspiracy, and with the knowledge and consent of all of said conspirators (*i. e.*, Bailey, Sage, and Mrs. McKee), the said eight hundred dollars in cash was divided by the said Henry V. Bailey and Timothy K. Sage, and that four hundred dollars of said money so obtained by said Sage was hidden by him upon the person of his wife, where the same could not and cannot be reached by due process of law, and that the said four hundred dollars so obtained by said Henry V. Bailey was concealed upon the person of one Miss Anderson, the aunt by marriage of the said Henry V. Bailey, where the same cannot be reached by law", the evidence sought to be elicited was relevant; but up to the time this testimony was offered, the record discloses no evidence going to show a conspiracy between Bailey and Sage, or either of them, and Mrs. McKee, and hence the same was properly excluded. The trial court offered to allow it to go in if the evidence was offered for the purpose of establishing that the money had been paid to Mrs. McKee, and when counsel for appellant refused to state that it was for that purpose he asked the question, the court very properly, we think, sustained the objection.

As to the question of conspiracy, we need only say that we find nothing in the testimony justifying the charge.

There being no error in the record, the judgment is affirmed. All concur.