Snell v. Harrison.

SNELL, *Plaintiff in Error*, v. HARRISON *et al.*

DIVISION ONE.

1. **Fraudulent Conveyance**: EJECTMENT. A conveyance made in fraud of creditors is void and will not bar a recovery in ejectment.

2. **Mortgage**: NOTICE OF SALE. A mortgagee, whether directed or not by the mortgage, should give notice of sale by him.

3. **Fraudulent Conveyance**: BADGES OF FRAUD. An unusual method of transacting business is a badge of fraud.

4. **Tenants in Common**: PURCHASE OF OUTSTANDING TITLE. While one tenant in common cannot buy in an adverse paramount title so as to oust his cotenant, yet it seems the foregoing rule is not applicable where the tenant buys in the independent interest of another tenant in common similarly situated as himself.

5. **Practice**: NONSUIT. While a plaintiff under our practice may take a nonsuit, a defendant cannot so as to prevent a part of the matter in litigation from being adjudicated.

6. **Bill of Exceptions**: SEAL : JOINDER IN ERROR : WAIVER. A bill of exceptions need not be sealed, and if so required an objection for that reason after joinder in error comes too late.

*Appeal from Henry Circuit Court.*—HON. JAMES B. GANTT, Judge.

REVERSED AND REMANDED.

*A. Comingo* and *M. A. Fyke* for plaintiff in error.

(1) The first instruction asked by plaintiff and refused by the court should have been given. *First* Defendants could not set up as an outstanding title a mortgage executed by themselves. *Laughlin v. Stone*, 5 Mo. 43; *Page v. Hill*, 11 Mo. 149; *Mathews v. Licompte*, 24 Mo. 545; *Gritchell v. Kreidler*, 12 Mo. App. 497; *Boyd v. Jones*, 49 Mo. 202; *Matney v. Graham*, 59 Mo. 190. *Second.* The deed made by Harvey Harrison was not effectual to foreclose the mortgage. (2) Plaintiff's second and third instructions should have been given. D. A. Glass by joining plaintiff in causing the land to be levied upon and sold as the property of Geo. W. Harrison, and by joining plaintiff in the purchase thereof, and in the suit to set aside the fraudulent conveyances made by Harrison, and by the decree in that case, was precluded from disputing that Harrison had the legal title to the whole eighty ; and those claiming under Glass are likewise estopped. *Thistle v. Buford*, 50 Mo. 278; *Crispen v. Hannavan*, 50 Mo. 415 ; *Peery v. Hall*, 75 Mo. 503 ; *Stautmore v. Clark*, 70 Mo.

471; *Hasenritter v. Kirchoffer*, 79 Mo. 239. It is established law that no man can be permitted to claim inconsistent rights with regard to the same subject, and whoever claims an interest under an instrument is bound to give full effect to that instrument as far as he can ; a person cannot accept and reject the same instrument ; or, having availed himself of it as a part, defeat its provisions in any other part. 1 Leading Cases in Equity [ Hare & Wallace notes ] 303. ( 3 ) The decree in the case of Snell and Glass *v.* Geo. W. Harrison, Brunetta Harrison *et al.* vested the title absolutely in Snell and Glass. Therefore, as between plaintiff and defendants, the decree in that case entitles plaintiff to recover seven-tenths of the whole. land. *Caldwell v. White*, 77 Mo. 471; *Hotel Ass'n v. Parker*, 58 Mo. 327 ; *Bigelow v. Winsor*, 1 Gray, 299. ( 4 ) The court erred in admitting in evidence, against plaintiff's objections, the judgment in ejectment in case of Snell and Glass *v.* G. W. Harrison. The judgment in that case was no bar to this suit. *Ekey v. Inge*, 87 Mo. 493. ( 5 ) The court erred in admitting in evidence the mortgage executed by G. W. Harrison and wife to Harvey Harrison. Defendants could not set up this mortgage as an outstanding title against plaintiff. See cases cited under first point. ( 6 ) The court erred in admitting in evidence the deed executed by Harvey Harrison to Brunetta Harrison, because G. W. Harrison's equity of redemption could not be foreclosed in that manner ; there is no power in the mortgage authorizing such sale, and without such power the mortgage could only be foreclosed by decree of court. R. S. 1879, sec. 3310.

*Samuel P. Sparks* for defendants in error.

(1) It is a familiar maxim of universal application, "that the possession of the tenant is the possession of the landlord." *May v. Luckett*, 48 Mo. 472 ; *Peutz v. Kuester*, 41 Mo. 447. *First.* Glass' deed to Mrs.

Harrison made her and Snell tenants in common of the premises in controversy. *Second.* Snell could only recover possession in such interest in the premises as he had title to. *Third.* A judgment in ejectment between tenants in common is only declaratory of the rights and interests of the parties. *Gray v. Givens*, 26 Mo. 303; Freeman on Coten. and Part., sec. 293. *Fourth.* The court in trial of this case proceeded upon the theories embraced in the foregoing propositions, which are only fundamental. (2) It is immaterial whether Brunetta Harrison acquired a perfect legal title or became merely the assignee of the Harvey Harrison mortgage of the south eighty; it being anterior to Snell's sheriff's deed was available to her as a defense in this collateral action at law. *Hubble v. Vaughn*, 42 Mo. 138; *Phyle v. Riley*, 15 Wend. 248; *St. John v. Bumstead*, 17 Barb. 100; *Johnson v. Houston*, 47 Mo. 227; *Howard v. Thornton*, 50 Mo. 291; *Jackson v. Magruder*, 51 Mo. 55. (3) After default in a mortgage of real estate, the mortgagee is entitled to the possession and can maintain ejectment therefor against the mortgagor and those claiming under him. *Reddick v. Gressman*, 49 Mo. 390; *Allen v. Ransom*, 44 Mo. 263; *Thornton v. Irwin*, 44 Mo. 153; *Pickett v. Jones*, 63 Mo. 195. The only interest G. W. Harrison had in the south eighty at the time of the rendition of the Snell-Glass judgment was an equity of redemption in a defaulted mortgage, which was swept away by the subsequent foreclosure. (4) The sale of the mortgaged premises by the mortgagee to Brunetta Harrison was a valid foreclosure of the equity of redemption of G. W. Harrison without public notice; since none was required by the instrument, the whole matter was left to the sound discretion of the mortgagee. R. S. 1879, sec. 3310; *Martin v. Paxson*, 66 Mo. 266; *Mowry v. Sanborn*, 68 N. Y. 153; 2 Jones on Mort. 1821, 1822. *First.* When there is a power of

sale contained in a mortgage it is not necessary to resort to a judgment or decree to foreclose the equity of redemption. *Johnson v. Houston*, 47 Mo. 227. *Second.* However erroneous and irregular the foreclosure may have been, Mrs. Harrison became invested with the legal title. *Jackson v. Magruder*, *supra*. *Third.* No one can complain of the acts of the mortgagee in selling on credit, if such was an improvident act, but the mortgagee. He is the only one who could by any possibility be injured. 2 Jones on Mortg., sec. 1615. (5) The doctrine that a defendant in an execution cannot set up an outstanding title has no application to the facts of this case. G. W. Harrison is not asserting any title or right of possession in himself whatever as to the south eighty. The title and right to the possession he had at the time of the rendition of the Snell-Glass judgments had been swept away by the foreclosure prior to the institution of this suit. *McCormick v. Fitzmorris*, 39 Mo. 24. (6) The agreement between Snell and Glass, in regard to the purchase and taking deed jointly at their execution sale, did not have the effect either to divest Glass of the one-third interest which he claimed and held at that time as heir of George W. Glass, recovered in the equity suit against G. W. Harrison, nor did it debar or stop him from acquiring the equity of Mrs. Ray in the premises to set aside the administrator's deed to Geo. W. Harrison. The subject-matter of the agreement related wholly to the purchase of the interest of Geo. W. Harrison in the premises at the date of this execution sale. *Blodgett v. Perry*, 97 Mo. 263. *First.* Courts in arriving at the meaning and intention of parties to contracts will look at the situation of the parties and the circumstances attending the transaction. *Second.* The entire judgment roll must be looked to in determining what was adjudicated in the equity suit of Snell and Glass against Brunetta Harrison. It is silent as to the respective interests of Glass and Snell. Snell is in no situation to invoke the doctrine of estoppel.

*Blodgett v. Perry, supra. Third.* But in that suit
Snell and Glass were not adversary parties, neither
could invoke the doctrine of estoppel by judgment.
*McMahon v. Geiger,* 73 Mo. 145. (7) The contract
between Snell and Glass, respecting the purchase at
sheriff's sale, was in writing, and respecting land, and
was entitled to record, but was not recorded. It could
not affect Mrs. Harrison, who was shown to have been a
purchaser for value without knowledge, notice or infor-
mation of its existence. *Fox v. Hall,* 74 Mo. 315.
(8) The deed of Mrs. Ray and husband to D. A. Glass
operated to transfer to him her equity in the north
eighty, which was a right to set aside the administra-
tor's deed to George W. Harrison. This, in turn, Glass
transferred to Mrs. Harrison by his deed of April 19,
1881, and delivered to her the possession of said tract.
The assignment of property carries with it the equity to
set aside the deed for fraud. *Smith v. Harrison,* 43
Mo. 557 ; *McMahon v. Allen,* 35 N. Y. 304 ; *Trayer v.
Clews,* 22 Cen. L. J. ( U. S. Supreme Court). This court
ought, upon the record in this case, in the interest of
justice and to prevent another suit, to modify the judg-
ment of the circuit court, which allowed Snell to recover
the Ray interest in the north eighty. (9) In an action
of ejectment against a husband, the wife is a proper
party defendant where she has an equity for the pur-
pose of having the same litigated. *Atkinson v. Dixon,*
75 Mo. 394; *Dixon v. Givan,* 75 Mo. 516. The paper
relied on as a bill of exceptions in this case was not
sealed, nor did it recite that it was a part of the record.
These were essentials to its validity. *Bank v. Pulitzer,*
11 Mo. App. 594. *First.* At common law it was essen-
tial to the verity of a bill of exceptions that it should
not only be signed but sealed. Stat. Westmin, 213
Edw. 1 Ch. 31 (1285); 2 Tidd's Prac. 862; 1 Arch. Prac.
by Chitty [11 Ed.]443; 2 Bac. Abridgment (by Bouvier),
113; *Strother v. Hutchinson,* 4 Bing. (N. C.) 89; *Pom-
eroy's Lessee v. Bank,* 1 Wall. 592. *Second.* The

paper relied on as a bill of exceptions does not purport on its face to be sealed, nor is there any scroll affixed to the signature of the judge. This was essential to constitute a sealing. R. S. 1879, sec. 662.

SHERWOOD, P. J.—On the twenty-second day of May, 1885, plaintiff brought ejectment for the east half of the southwest quarter and the west half of the southeast quarter of section 13, township 45, range 24, Johnson county, Missouri. This cause in another form, and with an additional plaintiff and with additional defendants, was before this court on a former occasion. 83 Mo. 651. The decree entered therein setting aside the title of the defendants to the land above described on account of fraud upon the creditors of G. W. Harrison and vesting the same in the then plaintiffs, Snell and Glass, bears date February 24, 1880, and the proceedings which resulted in that decree, afterwards affirmed in this court, were instituted the twenty-third day of May, 1878.

On the twenty-first day of October, 1885, defendant, G. W. Harrison, filed amended answer, in which he admits that on the first of June, 1880, plaintiff was entitled to the possession of the undivided seven-tenths of twenty-six and two-thirds acres of the premises sued for, being the south thirds of the northeast quarter of the southwest quarter and the northeast quarter of the southeast quarter of the said section 13. Defendant, states that he has not been in possession of the above described portions of said premises since April 1, 1885.

Defendant also alleges that on the fourth day of March, 1881, plaintiff obtained a judgment against defendant for the possession of said portion of said premises, and damages, and rent, and profits, which judgment remains in full force.

Defendant admits that he is in possession of the remainder of the premises in controversy. Defendant says that as to the northeast quarter of the southwest quarter, and the northwest quarter of the southeast

quarter of said section 13, that one George W. Glass died intestate, seized and possessed in fee simple of said premises; that he left surviving him his widow, Rebecca Glass, and Lucinda Glass and David A. Glass, his only children.

That the estate of said George W. Glass was administered in Johnson county, Missouri, and that said widow filed in probate court of Johnson county her election in writing to take as a child in lieu of dower, whereby she became entitled to one-third interest in said premises; that Rebecca Glass, Lucinda Glass and David A. Glass afterwards, for the purpose of making partition of said premises, mutually agreed, in consideration of the release by the said Rebecca of all claims in and to the north two-thirds of said premises, she should take the south one-third of said tract and Lucinda and David should take the north two-thirds of said premises.

That afterwards Rebecca Glass sold to defendant, George W. Harrison, the said south one-third of the said tract, and that he immediately entered into the exclusive possession of said south third of said tract and continued to occupy the same with the knowledge and consent of the said Lucinda and David A. Glass; that afterwards the said Lucinda married one Joseph R. Ray; that afterwards in course of the administration of the estate of George W. Glass the said northeast quarter of the southwest quarter and the northwest of the southeast was ordered to be sold for the payment of debts.

That at said sale defendant, George W. Harrison, became the purchaser; the sale was approved and a deed made by the administrator conveying said land to defendant, George W. Harrison; that afterwards, in January, 1875, the said David A. Glass commenced a suit in the circuit court of Johnson county to set aside said administrator's deed, and to divest said Harrison of all title to said property which he acquired by virtue of said administrator's deed; that at the June term,

1876, a decree was entered setting aside said sale and deed, as to the said David A. Glass, and divesting said Harrison of all title to said property as to the interest of the said Glass ; that thereafter said Harrison did not assert or claim any title or interest in said lands by virtue of said administrator's deed ; that on the twenty-ninth of January, 1879, the said Lucinda Ray and hus-band conveyed the undivided one-third interest in said tract to David A. Glass ; that on the nineteenth of April, 1881, said David A. Glass, in consideration of $400 paid him by *this defendant*, sold and conveyed all his right, title and interest in said tract to Brunetta Harrison, whereby she became the owner of the north two-thirds of said tract, and as such owner entitled to the possession thereof.

That said Brunetta Harrison purchased and paid said Glass for said north two-thirds of said tracts, rely-ing upon the actions and conduct of said George W. Harrison, and his disclaimer of any interest in said tracts under and by virtue of said administrator's deed.

This defendant further says that on the fifteenth of February, 1878, the said David A. Glass and plaintiff J. R. Snell became the owners of all the title and estate of the said George W. Harrison in the said south third of said tracts by purchase at execution sale, upon judg-ments against said George W. Harrison ; that at said sale said Glass became the owner of the undivided three-tenths interest in said tracts.

This defendant, as the husband of said Brunetta Harrison, holds and claims under her right and title. On the same day defendant, George W. Harrison, filed a motion asking that his wife, Brunetta Harrison, be made a party defendant. This motion was granted, and Bru-netta Harrison filed her separate answer.

She admits that on the first day of June, 1880, plain-tiff was and still is entitled to the possession of an undi-vided seven-tenths of twenty-six and two-thirds acres, being the south thirds of the northeast quarter of the

southwest quarter and the northwest quarter of the southeast quarter of section 13, township 45, range 24. She disclaims all interest in said seven-tenths, as to the northeast quarter of the southwest quarter and the northwest of the southeast. She claims that she paid $400 to Glass for his interest in the land; otherwise she sets up the same facts set up by George W. Harrison in his answer. She concludes her answer by alleging that she is the owner of the whole of the northeast quarter of the southwest quarter and northwest of the southeast quarter, saving and excepting an undivided seven-tenths of the south twenty-six and two-thirds acres off the south side thereof, which belongs to plaintiff except the inchoate right of dower therein of the defendant. She prays that upon a final hearing her rights, equities and interests in said northwest southeast and northeast southwest be ascertained and declared, and that plaintiff be debarred and stopped from having or claiming any interest therein, and for all equitable and proper relief.

Upon the application of defendants a change of venue was awarded to Henry county. Plaintiff filed a reply denying the matters alleged in the answers of defendants. The cause was tried September term, 1886, in the Henry county circuit court.

The decree referred to, caption included, is the following :

"John R. Snell and David A. Glass,

v.

"Brunetta Harrison and Geo. W. Harrison, her husband, Chas. A. Harrison, Mary A. Harrison, Harvey E. Harrison, Nellie M. Harrison and Virgie Harrison, minor heirs of A. B. Harrison, deceased, defendants.

"Now at this day come the parties aforesaid by their attorneys and the motion of plaintiffs heretofore filed to set aside and disregard the finding of the jury

on the issues submitted to them by the court, and to render a decree in pursuance of the prayer of said plaintiffs' petition in favor of plaintiffs coming on to be heard is taken up and submitted to the court, and the same, after being fully seen and heard, is by the court sustained and the findings of the said jury set aside, and the court, having seen and heard all the matters in evidence submitted in the cause, doth find: That on and prior to the thirtieth day of March, 1874, the defendant, G. W. Harrison, was the owner and in possession of the following described real estate, situated in the county of Johnson, and state of Missouri, to-wit: The east half of the southwest quarter and the west half of the southeast quarter and the northeast quarter of the southeast quarter of section 13, township 45, range 24, containing in all two hundred acres, and lots 7 and 8 in block 'M' in the railroad extension to the town of Knobnoster, and continued to own the same until the purchase thereof by the said plaintiffs at execution sale at the February term, 1878, of this court, and that the deed made by said G. W. Harrison and wife October 9, 1875, to A. B. Harrison, conveying the said two hundred acres of land for the purported consideration of $2,000, was voluntary and void and made with the intent to hinder, delay and defraud the creditors of the said G. W. Harrison; that, at the sale on execution of said land in said section 13 and lots 7 and 8, on the judgment for costs, on the fourteenth day of October, 1876, the same was purchased by the said A. B. Harrison for the use and benefit of the said G. W. Harrison, and in fraud of the rights of the creditors of the said G. W. Harrison; that, at the sheriff's sale to Joel H. Warren on the eleventh day of October, 1877, under the four executions against the said G. W. Harrison, one in favor of J. W. Dawson, two in favor of John Snell and one in favor of D. A. Glass, the said real estate, except the said lot 8, was purchased by the said Joel H. Warren for the use of said G. W. Harrison

and in fraud of the rights of the creditors of the said G. W. Harrison, and that said Joel H. Warren held said title by virtue of said purchase at said sheriff's sale for the use and benefit and in trust for the said G. W. Harrison, and the court further finds that the said Brunetta Harrrison, wife of the said G. W. Harrison, took the conveyance of said real estate from the said Warren through his quitclaim deed dated January 24, 1878, with full knowledge of the indebtedness of said G. W. Harrison and held said land in trust for the said G. W. Harrison and in fraud of the creditors of said G. W. Harrison, and took and held said title with the intent to hinder and delay the creditors of said G. W. Harrison, and that the said A. B. Harrison, Joel H. Warren and Brunetta Harrison, each and all of them as volunteers, took the title to said real estate in the aforesaid conveyances, and each held the same for the use and benefit of said G. W. Harrison with full and complete knowledge at the respective dates of said sales and purchases; that the said Geo. W. Harrison was largely indebted, and that his purpose was to place the title to his said real estate so that his creditors could not reach the same, and to hinder, delay and defraud them out of their just claims, and the court finds that said A. B. Harrison departed this life on the nineteenth day of June, A. D. 1877, and that said defendants, Charles H., Mary A., Harvey E., Nellie M. and Virgie Harrison are his children and heirs at law.

"And the court further finds that on and prior to October 9, 1875, the said G. W. Harrison was largely indebted, and at said date was owing one John Snell a note of $600, dated March 30, 1874, upon which a suit was then ( October, 1875 ) pending in this court by the said John Snell v. said G. W. Harrison, upon which judgment was finally rendered October 16, 1877, for $700.35, against said G. W. Harrison; that in January, 1875, said D. A. Glass commenced his suit in this court against said defendant, G. W. Harrison, to set aside a

certain deed as to one-third of eighty acres of the aforesaid land and to vest said interest in said Glass, wherein the court at its June term, 1876, set said deed aside as fraudulent as to said one-third interest in said eighty acres and vested same in said D. A. Glass, and at the October term, 1877, of this court in a suit of ejectment by said Glass against said Harrison for the possession of said one-third interest in said eighty acres, such proceedings were had that said Glass obtained judgment for possession of his interest and for $300 damages for the detention of said premises; that afterwards executions duly issued upon above recited judgments, one in favor of John Snell for $700.35 and costs, one in favor of said Glass for $300 and costs, and were duly levied upon the aforesaid two hundred acres of land and said lots 7 and 8 as the property of said G. W. Harrison, and the same was by virtue of said executions sold at sheriff's sale to said plaintiffs February 15, 1878, and sheriff's deed therefor duly executed and delivered to said plaintiffs and that said plaintiffs are now the owners of said real estate.

"It is, therefore, ordered, adjudged and decreed by the court that the said deeds to said A. B. Harrison, Joel H. Warren and Brunetta Harrison each and all of them be set aside and held for naught, and that the title to said real estate, to-wit: East one-half of southwest quarter and west one-half of southeast quarter, and northeast quarter of southeast quarter, all in section 13, township 45, range 24, and lots 7 and 8 in block 'M,' railroad extension to the town of Knobnoster, all in Johnson county, Missouri, be divested out of and from the said defendants and each of them and that the same be fully vested in said plaintiffs, and that said defendants pay all costs accrued in this suit, and that execution issue therefor."

This decree was read in evidence by the plaintiff on the hearing of this cause, and, also, the sheriff's deed executed February 15, 1878, and recorded four

days thereafter, which recites that on the twenty-sixth day of October, 1877, judgment was rendered in the circuit court of Johnson county, Missouri, in favor of David A. Glass and against Geo. W. Harrison for a $300 debt, and $17.73 costs, upon which an execution was issued, dated the twenty-fourth day of December, 1877; and delivered to said sheriff on the twenty-sixth of December, 1877, and that on the sixteenth of October, 1877, judgment was rendered in said court in favor of John Snell, and against Geo. W. Harrison for the sum of $700.35 debt and $87.35 cost, upon which judgment execution was issued December 21, 1877, and was delivered to the sheriff on the twenty-fourth of December, 1877; that on said twenty-fourth of December, 1877, said sheriff, by virtue of the execution in favor of Snell, levied upon the property described in the petition; that on the fourteenth of January, 1878, said sheriff levied the execution in favor of D. A. Glass on the same property. The sheriff's deed further recites in substance that by virtue of these two executions he sold the property; that at the sale the same was struck off to John R. Snell and David A. Glass, and he conveys to Snell and to Glass the east half of the southwest quarter and the west half of the southeast quarter, all in section 13, township 45, range 24, in Johnson county, Missouri, *i. e.*, seven-tenths to Snell, and three-tenths to Glass in said land.

Plaintiff then offered in evidence the following agreement:

"This contract or agreement, made by and between J. R. Snell and D. A. Glass, witnesseth, that the said parties have this day bought at execution sale, as the property of Geo. W. Harrison, the east half of the southwest quarter and the west half of the southeast quarter and the northeast quarter of the southeast quarter, all of section 13, township 45, range 24, and lots 7 and 8, in block 'M,' in the railroad extension to the town of Knobnoster, and all in Johnson county, state of

Missouri. With this agreement between themselves, that whereas the said J. R. Snell represented the estate of John Snell, deceased, which had a judgment at the October term of the circuit court, A. D. 1877, of said county against said Harrison of over $700, and the said Glass obtained a judgment of $300 at the same term against the said Harrison, they have agreed that for the purpose of procuring and holding the said land, or getting money as the proceeds thereof, the said J. R. Snell shall and does own seven-tenths thereof, and the said D. A. Glass three-tenths thereof; each shall be responsible for the payment of costs, accrued in his own case prior to sale, but the costs after sale in procuring titles and possession of said land shall be borne by the said parties in the aforesaid proportions, to-wit: J. R. Snell shall pay seven-tenths, and D. A. Glass three-tenths thereof including the purchase money at said execution sale, but each party shall pay his own attorney fees.

"Dated at Warrensburg, Missouri, this fifteenth day of February, 1878.

"[ Seal.]                    JOHN R. SNELL.
"[ Seal.]                    DAVID A. GLASS."

Plaintiff next offered in evidence the petition on which the decree aforesaid was obtained, but, as its statements are all contained in substance in said decree, it is unnecessary to repeat them.

In that case, Geo. W. Harrison filed a separate answer to said petition, a general denial. Defendant, Brunetta Harrison, filed separate answer as follows: "She denies each and every allegation and statement set forth in said petition and says that each and every one of them are untrue. And for further answer states that she is the legal owner in her own right of that portion of the real estate described in the plaintiff's petition, to-wit: East half of southwest quarter and the west half of the southeast quarter and the northeast of the southeast quarter, all in section 13, township 45,

range 24, and lots 7 and 8, in block 'M', of the railroad extension to the town of Knobnoster in Johnson county, Missouri; that the same was purchased for a valuable consideration from J. H. Warren; that the money paid to said J. H. Warren for said real estate was of her own property, held by her in her own right and for and on account of which the said J. H. Warren sold and in good faith conveyed to her the above-described real estate, and she is now in possession of the same and holding the same in her own right, wherefore defendant says that the plaintiffs have no just cause of action against this defendant and are not entitled to any judgment or decree affecting her interest in said real estate, and having answered prays that said bill as to her be dismissed with her costs."

The heirs of A. B. Harrison, by guardian *ad litem*, filed answer denying the allegations in the petition. But the court found to the contrary of said answers as already seen in the decree heretofore set forth.

David A. Glass then testified on behalf of plaintiff: "I am the same D. A. Glass who was mentioned in the suit with Brunetta Harrison *et al.* to set aside certain deeds. I entered into the agreement with Dr. Snell offered in evidence; at the time this suit was brought, Geo. W. Harrison was in possession of this land. The land is worth $2.50 per acre, rent per annum. After Dr. Snell and I bought the land at sheriff's sale, we joined in a suit against Brunetta Harrison and others to set aside some deeds from Geo. W. Harrison on the ground of fraud. The case went to the supreme court. I claimed three-tenths of the land, and Dr. Snell claimed seven-tenths; that is the way we bought it at the sheriff's sale. I did not claim any other interest in the land."

Cross-examined: "I sold to Mrs. Harrison on the twentieth of April, 1881. Was in possession of about forty or fifty acres of the north eighty described in the petition. I claimed an interest of three-tenths in the

land described in the petition. I took possession after the purchase at sheriff's sale and cultivated the land the next or the second year thereafter. I took a deed from Mrs. Ray the first or second year after purchasing at sheriff's sale."

Plaintiff, in his own behalf, testified as follows: "I am the plaintiff. I know the land in controversy. It could be rented for $2.50 per acre per annum; it is worth that. Before the land was sold by the sheriff, D. A. Glass and I entered into the agreement to buy the lands and hold them in proportion to the amount of our judgments, and we did so buy the lands." This is all the evidence offered by the plaintiff in chief.

To maintain the issues on their part, the defendants offered in evidence the transcript of record and proceedings in the case of David A. Glass *v.* Geo. W. Harrison in the Johnson county circuit court commenced on the twenty-first day of January, 1875.

The petition in that cause was entitled: "Lucinda Ray and —— Ray, her husband, and David A. Glass, an infant, who sues by James R. Glass, his guardian, and curator, plaintiff, against Geo. W. Harrison, defendant." The petition states in substance that plaintiff's father, Geo. W. Glass, died intestate, seized of the real estate therein described, to-wit: The northwest quarter of the southeast quarter and the northeast quarter of the southwest quarter all in section 13, township 45, range 24; that he left as his only heirs at law Lucinda and David A. Glass, and his widow, Rebecca.

That defendant was a brother-in-law of said Geo. W. Glass; that defendant connived with the administrator of their father's estate and procured the allowance in the probate court of fictitious claims, and fraudulently procured the land to be sold by order of the probate court and obtained a deed to said land. The petition sets out in full the fraudulent acts of the defendant, and prays that the administrator's deed to

defendant, Geo. W. Harrison, be set aside, and for judgment for possession of the premises and for rents and profits.

Afterward, at the June term, 1875, David A. Glass, by guardian and curator, filed an amended petition making Lucinda Ray and husband parties defendant with Geo. W. Harrison; he prays that the administrator's deed be set aside as to his interests and for possession thereof. (The administrator's deed sought to be set aside by this proceeding was dated April 4, 1870.) Defendant, Geo. W. Harrison, filed an answer denying specifically all the allegations in the petition. Lucinda Ray and husband did not file any answer.

At the February term, 1876, plaintiff filed a second amended petition, in two counts, the first to set aside the administrator's deed to Harrison, the second for possession and for rents and profits. With the second amended petition were filed as exhibits the administrator's deed, the application to the administrator to sell the real estate, the order of the probate court ordering the land sold, copy of the appraisement and report of sale with the order of the probate court approving the same. Defendant, G. W. Harrison, filed an answer to the amended petition denying specifically all the allegations therein contained. At the June term, 1876, the cause was tried.

The court found that defendant was guilty of all the fraudulent conduct charged against him in the petition and decreed as follows: "It is, therefore, ordered, adjudged and decreed by the court, that said allowance as well as said sale of said land as made by said public administrator together with said deed executed by said administrator to said defendant Harrison, be and they are hereby annulled and held for naught, so far as they affect the rights of David A. Glass, and that said defendant, G. W. Harrison, be divested of all rights and title which he may have acquired by virtue of said sale of said land and the deed therefor, and it having been

shown to the court that said administrator has, in his hands, money arising from the sale of said land, which would properly belong to D. A. Glass if the sale had properly been made; it is, therefore ordered that said administrator pay the same to said defendant, and it is further adjudged and decreed that the said defendant pay the costs and charges herein sustained, and that execution issue therefor."

To the introduction of the record and proceedings in the cause of D. A. Glass *v.* G. W. Harrison, above referred to, plaintiff objected, because the same was irrelevant, incompetent and immaterial; because plaintiff was no party to said action, and because Glass and those claiming under him with knowledge were estopped from claiming any other interest than that acquired at the sheriff's sale; which objections were overruled by the court, and plaintiff at the time excepted.

The defendants also offered in evidence the judgment obtained by David A. Glass in the ejectment count in his petition aforesaid, showing a recovery of $300 for damages as well as rents and profits, it being one of the same judgments recited in the sheriff's deed heretofore mentioned. The return in this transcript also shows the acknowledgment of satisfaction of said judgment made on the margin of the record thereof, signed by David A. Glass, and dated April 20, 1881.

The plaintiff vainly urged objections to this transcript. The defendants next introduced in evidence over plaintiff's objections transcript of the record in an ejectment suit brought by plaintiff and David A. Glass against G. W. Harrison on the twenty-seventh of July, 1880, in which they recovered judgment for certain portions of the land in suit.

Over objections of plaintiff the defendants then introduced in evidence a copy of the administrator's deed to G. W. Harrison, executed April 4, 1870, and which the decree in favor of Glass set aside on account of Harrison's fraud, as already stated.

Defendants next introduced a quitclaim deed from David A. Glass to Brunetta Harrison, dated April 19, 1881, conveying to her for the sum of $100 the west half of the southeast quarter, the east half of the southwest quarter of section 13, township 45, range 24, etc., also warranty deed dated January 29, 1879, from Lucinda Ray and her husband to David A. Glass, consideration $50,—conveying to him the undivided one-third in the land last aforesaid.

Defendants next introduced the following instrument: "This indenture made the sixth day of July, in the year one thousand, eight hundred and seventy-four (1874), between G. W. Harrison and Brunetta Harrison, of the county of Johnson, state of Missouri, parties of the first part, and Harvey Harrison, guardian and curator of the minor heirs of Charles Culver of the county of Johnson, state of Missouri, parties of the second part, witnesseth : That the said parties of the first part in con-consideration of the sum of four hundred dollars ($400), to them duly paid, *has* bargained and sold, by these presents *does* grant and convey to the said party of the second part and his heirs and assigns forever all the right, title and interest to the following described real estate, viz. :   The southwest quarter of the southeast quarter, and the southeast quarter of the southwest quarter in section number thirteen (13), township number forty-five (45), range number twenty-four (24), situated in the county of Johnson, state of Missouri.   This grant is indorsed as security for the payment of a certain note herein described : 'Knobnoster, Missouri, July 6, 1874.   Twelve months after date I promise to pay to Harvey Harrison, guardian and curator, of the minor heirs of Charles Culver, deceased, four hundred dollars ($400), for value received, with interest at the rate of ten per cent. per annum ; which payment, if duly made, will render this conveyance void ; and if default shall be made in the payment of the

principal or interest above mentioned, then the said party of the second part or his executors, administrators or assigns are hereby authorized to sell the premises above granted, or so much thereof, as will be necessary to satisfy the amount then due, with the cost and expenses allowed by law.'

"In witness whereof, said parties of first part have hereunto set their hands and seals the day and year above written.

"(Signed)        G. W. HARRISON        [Seal].
"BRUNETTA HARRISON [Seal]."

Which instrument was acknowledged on the sixth day of July, 1874, and filed for record on the ninth day of July, 1874. Objections made by the plaintiff to this instrument were also overruled.

Defendants next introduced in evidence the following deed:

"Whereas Geo. W. Harrison and Brunetta Harrison, his wife, of the county of Johnson and state of Missouri, did by their mortgage deed, recorded in book J, page 208, on the sixth day of July, 1874, grant, bargain and convey to the undersigned Harvey Harrison as guardian and curator of the minor heirs of Charles Culver, deceased, the following described real estate situated in the aforesaid county of Johnson, to-wit: The southwest quarter of the southeast quarter and the southeast quarter of the southwest quarter of section 13, of township 45, and of range 24, for the purpose of securing the payment of a certain promissory note therein described; and whereas default has been made in the payment of the principal and interest of said note, now, therefore, I, the said Harvey Harrison, by virtue of the power and authority in me vested by said deed and in consideration of the sum of $745 to me in hand paid by the said Brunetta Harrison, receipt whereof is hereby acknowledged, do by these presents grant, bargain and sell unto the said Brunetta Harrison the said real estate described as follows, to-wit: The

southwest quarter of the southeast quarter, and the southeast quarter of the southwest quarter, both of section 13, of township 45, of range 24; to have and to hold the above-described real estate unto the said Brunetta Harrison, her heirs and assigns forever, with all the rights, privileges and appurtenances hereto belonging, that I might or could convey by virtue of the aforesaid mortgage deed, or by virtue of the aforesaid premises.

"In testimony whereof, I have hereunto set my hand and affixed my seal this. the fourteenth day of January, A. D. 1882.

"[Seal.]            HARVEY HARRISON."

This instrument was duly acknowledged and filed for record on the eighteenth of August, 1882. This was also read over plaintiff's objection.

G. W. Harrison's discharge in bankruptcy dated May 26, 1885.

Defendant, G. W. Harrison, was then introduced as a witness for defendants and testified as follows: "I am one of the defendants; Brunetta Harrison is my wife. I am in possession of the land in right of my wife. The rental value of the land is from $1.25 to $2.50 per acre per annum. I borrowed the money from Harvey Harrison, secured by the mortgage on the south eighty. My wife [bought and] furnished the money to buy the land at the sale made by Harvey Harrison under his mortgage. [He had offered to sell to Snell the plaintiff, at the same price.] My wife, as tenant of Harvey Harrison, or the mortgagee, was in possession of the south eighty some two or three years prior to the date of the deed from him to her, read in evidence. She held possession [I presume] through me as her husband. The contract, however, was in writing between Harvey Harrison and my wife; he had taken possession before that as mortgagee. After the sale, she, through me, as her husband, held possession down to the present time. I consider I am in possession in

right of my wife. I paid all rents on twenty-six and two-third acres of the north eighty down to February, 1886. Up to the time my wife purchased of D. A. Glass, April 20, 1881, I was only in possession of the south one-third of the north eighty. Glass had been in possession of the remainder of it since the setting aside of the administrator's deed to me as shown by decree read in evidence. This appeared in the evidence on the trial before Jackson as special judge in the eject-ment suit brought by Snell and Glass against me, while their equity case was pending in the supreme court; and, in that case, for this reason they dismissed as to all but this one-third—I mean the south one-third—and recovered possession of this south one-third in that suit. I acted for my wife in the purchase of the interest of D. A. Glass in all this land represented by this deed to her of date April 20, 1881. She furnished her own separate money to buy it, proceeds of rent of her land held to her separate use. When I purchased, I understood from D. A. Glass that this conveyance represented not only the interest he held under contract with Snell, but also the interest which Ray and wife conveyed to him and his own interest in the north eighty which he got by setting aside the administrator's deed. The interest which my wife bought, or I as her agent thought she was buying, amounted to two-thirds of the north eighty acres."

Cross-examined: "The money paid to Glass for quitclaim deed was furnished by my wife. She got the money from proceeds of some land she owned near the. Henry county line. I had nothing whatever to do with furnishing the money. The way the money was paid on the mortgage was by my wife giving her note, I signed the note with her. The note was recorded."

Defendants next read in evidence a warranty deed executed and acknowledged by Stephens and wife to Brunetta Harrison, on a certain eighty acres of land in section 27, township 45, range 24, in Johnson county,

Missouri, for the expressed consideration of $1,265, stated therein, to be paid to them by Brunetta Harrison. This deed conveyed the said property to the sole and separate use of said Brunetta and was executed and acknowledged on the eighth day of January, 1880, and recorded on the eighteenth day of March next thereafter. This deed as shown by the date of the decree already copied in the first part of this statement, was executed shortly before said decree was entered, and put to record shortly thereafter, and while this cause was pending on appeal in this court. Brackets have been placed around such portions of G. W. Harrison's testimony as do not occur in the *record*, and his cross-examination has also been added from that *record*, which was omitted from the abstract of defendants in error.

In rebuttal plaintiff offered in evidence certified copy of note from Brunetta Harrison and Geo. W. Harrison to Harvey Harrison, as follows: "Brunetta Harrison to Harvey Harrison, $745.

"WARRENSBURG, Mo., January 14, 1882.

"Twelve months after date, we, or either of us promise to pay to Harvey Harrison or order, seven hundred and forty-five dollars ($745), the purchase money for the southwest quarter of southeast, and the southeast quarter of the southwest quarter of section thirteen (13), township forty-five (45), range twenty-four (24), in Johnson county, state of Missouri, for value received, with interest from date at ten per cent. per annum.                    BRUNETTA HARRISON,

"G. W. HARRISON."

The foregoing instrument was *filed for record* January *28, 1882*.

The foregoing was substantially all the testimony offered in the cause.

The court then entered the following decree in the cause:

"Now at this day come the said parties plaintiff and defendant by their respective attorneys, and the said defendant, Brunetta Harrison, by her attorney of record herein, Samuel P. Sparks, leave of the court being first had and obtained for that purpose, is allowed to by the court and does voluntarily dismiss from her amended answer herein, without any prejudice to her rights whatever, the following described interest or portion of the premises in controversy, to-wit: An undivided seven-tenths of the undivided one-third of the northwest quarter of the southeast quarter and the northeast quarter of the southwest quarter, both of said tracts being in section 13, township 45, range 24, in Johnson county, Missouri, being the interest conveyed by deed of Joseph R. Ray and his wife, Lucinda A. Ray, to D. A. Glass of date January 29, 1879, recorded in the recorder's office in Johnson county, Missouri, in book 37, page 97.

"And the court, being fully advised touching the matters in controversy in this case, doth find from the pleadings and all the evidence in the case, that the defendant, Brunetta Harrison, and her codefendant, G. W. Harrison, are now, and were at the time of the institution of this suit, husband and wife; and that the said defendant, Brunetta Harrison, was at the time of the institution of this suit the legal owner of the following described portion or interest in the premises in controversy, to-wit: The whole of the southwest quarter of the southeast quarter, and the southeast quarter of the southwest quarter and sixteen-thirtieths of the northwest quarter of the southeast quarter, and the northeast quarter of the southwest quarter, all in section number 13, township 45, range 24, and that, at the time of the institution of this suit, the said defendant, G. W. Harrison, was in possession of said portion of said premises as the husband of said Brunetta Harrison, and claiming his right to such possession under said Brunetta Harrison solely ; and that the said John R. Snell was at the

time alleged in the petition, to-wit, June 1, 1880, and still is, entitled to the possession of the remaining fourteen-thirtieths of the said northwest quarter of the southeast quarter and the northeast quarter of the southwest quarter, and being so entitled to the possession, that the defendant, G. W. Harrison, afterwards, on the second day of June, 1880, entered into such possession and unlawfully withholds from plaintiff the possession thereof, to his damage in the sum of $52; that the present monthly value of the rents and profits of said undivided fourteen-thirtieths of said northwest quarter of southeast quarter and northeast quarter of southwest quarter is the sum of $6.50. Wherefore it is considered and adjudged by the court that the said plaintiff have and recover of said defendant, G. W. Harrison, the possession of the undivided fourteen-thirtieths of said northwest quarter of southeast quarter and northeast quarter of southwest quarter, of said section 13, township 45, range 24, Johnson county, Missouri, and the said sum of $52 for his damages, and the sum of $6.50 monthly rents and profits, and that he further recover of said defendant, G. W. Harrison, his costs herein expended and have execution therefor."

After an unsuccessful motion for a new trial, plaintiff brings up this cause on error.

I.   As will have been observed from the foregoing statement, much of the evidence in this cause which was *dumped* upon the lower court, had no more of relevancy to the issues joined therein than the rings on Saturn.

It will be well, therefore, to shovel away the huge pile of *debris* which forensic contention has heaped on the foundations of this cause in order that we may know just where the lines of those foundations run. Here is a diagram of the *locus in quo :*

Snell v. Harrison.

For convenience we will hereafter refer to the land in dispute as the north eighty and the south eighty.

The chain of title to the latter eighty is the following:

*First.*   Geo. W. Harrison owned it in 1874.

*Second.*   Geo. W. Harrison and Brunetta to Harvey Harrison, mortgage, 1874.

*Third.*   Geo. W. Harrison and wife to Alfred B. Harrison, warranty deed, 1875.

*Fourth.*   Geo. W. Harrison, by sheriff, to Alfred B. Harrison, sheriff's deed, 1876.

*Fifth.*   Geo. W. Harrison, by sheriff, to J. H. Warren, sheriff's deed, October 26, 1877.

*Sixth.*   J. H. Warren and wife to Brunetta Harrison, quitclaim, January 24, 1878.

*Seventh.*   Geo. W. Harrison, by sheriff, to Snell and Glass, sheriff's deed, February 15, 1878.   July 16, 1878, suit was filed by Snell and Glass to set aside deeds above numbered 3, 4, 5 and 6, and on February 24, 1880, a decree was rendered in the Johnson county circuit

court divesting Geo. W. Harrison, Brunetta Harrison and the heirs of Alfred B. Harrison and J. H. Warren of all title to said land and vesting the same in Snell and Glass.

*Eighth.* David A. Glass to Brunetta Harrison, quitclaim, April 19, 1881. Harvey Harrison to Brunetta Harrison, January 14, 1882.

The decree of February 24, 1880, swept out of existence all the right, title and interest which Geo. W. Harrison had in the land in controversy, as well as all that his wife Brunetta had, by and through the covinous contrivances, fraudulent execution sales, sheriff's deeds and individual deeds in that decree set forth. The only thing which could arrest the searching and sweeping force of that decree, as to a portion of the land, was the mortgage executed by G. W. Harrison and his wife July 6, 1874, whereby the south eighty was conveyed to Harvey Harrison. But these remarks only apply to the *legal* title of G. W. Harrison, and not to any *equity* of his which might pass in consequence of the execution sales in favor of Snell and in favor of Glass and by reason also of the decree of February 24, 1880, in their favor. Under which proceedings plaintiff would be entitled to seven-tenths of the *equitable* title of G. W. Harrison in said south eighty.

This statement is, however, made upon the theory that the mortgage executed by G. W. Harrison and wife to Harvey Harrison, conveying to the latter the south eighty, was a *bona fide* instrument and not a *mere sham*, intended to assist G. W. Harrison in concealing his property from his creditors.

That G. W. Harrison and Brunetta, his wife, had no scruples in that direction and were familiar with such covinous contrivances and were well disposed toward the same is conspicuously and abundantly shown by the chain of title already set forth and by the decree of February 24, 1880, which overthrew and brought to naught all those fraudulent transactions. But note

other matters: The mortgage in question on the south eighty was executed on the sixth day of July, 1874, and the note thereon secured was made by G. W. Harrison and made payable twelve months after date with interest at ten per cent. per annum, was signed not only by G. W. Harrison but by his wife, Brunetta, who at that time does not appear to have been even the apparent owner of any property whatever. At that time, also, G. W. Harrison's note to Snell had been due since March 30, 1874, and he was otherwise in embarrassed circumstances.

On October 9, 1875, this same south eighty (as well as the north eighty, also) had been conveyed by G. W Harrison and wife to A. B. Harrison for an expressed consideration of $2,000, which conveyance, the decree of February 24, aforesaid, found to be fraudulent and void. In addition to the foregoing facts, the sale and deed made by Harvey Harrison to Brunetta Harrison on the fourteenth day of January, 1882, though the deed was not acknowledged and recorded till August 18, 1882, are remarkable in several particulars: As to the manner of executing the extraordinary power of sale alleged to have been conferred by the mortgage of 1874; as to the consideration for which sale and deed were made, and as to the fact that *they were made at all*.

Taking the alleged original debt, $400, and calculating the interest thereon at ten per cent. up to the date of said deed, it will be found that that sum put at single interest for, say, seven and one-half years will amount to about the sum for which the second note was given, $745. But if the note for $400 was a *real and valid debt* what was the reason Harvey Harrison, the curator of the minor heirs of Culver, did not pursue the usual course of business and of duty by annually collecting the interest due on that note for the benefit of his wards?

But what is more singular still: What *honest* object could a mortgagee, especially a *curator of minor heirs*, have in exchanging a note well secured by mortgage for one unsecured, and then *releasing that mortgage* by executing to the maker of the new note, a *married woman* at that, an *absolute deed* to the recently mortgaged property? No explanation of Harvey Harrison's unusual course and strange dereliction of duty in this regard is attempted. But one of two rational conclusions can be drawn from it, either that he was false to his wards, or else false to the duties as a citizen in assisting G. W. Harrison in concealing his property from his creditors.

But notice further: It is claimed that the mortgage under the terms of the statute, section 3310, Revised Statutes, 1879, conferred the power on Harvey Harrison without notice, publication or warning, bids, counter-bids or competition to sell the mortgaged premises at such time and place and for cash or on credit, as his own sweet will might determine, and thus foreclose G. W. Harrison's equity of redemption.

No case has been found where the point has been directly adjudicated. In *Davey v. Durrant*, 1 De G. & J. 535, the power given authorized a sale, either public or by private contract. In *Mowry v. Sanborn*, 68 N. Y. 153, and in *Martin v. Paxson*, 66 Mo., *loc. cit.* 266, the utterances were wholly *obiter*. But it has been determined that, "if the mortgagee omits to give proper notice, *whether directed by the power or not*, the sale may be impeached in chancery." 4 Kent [13 Ed.] 190.

Our statute to which reference has been made is the following (R. S. 1879, sec. 3310): "All mortgages of real or personal property, or both, with powers of sale in the mortgagee, and all sales made by such mortgagee or his personal representative, in pursuance of the provisions of such mortgages, shall be valid and binding, by the laws of this state, upon the mortgagors, and all persons claiming under them, and shall forever foreclose

all right and equity of redemption of the property so sold."

But in the mortgage in question there are no "provisions" "in pursuance" of which a sale was to occur. The statute, therefore, would seem not to sanction the view of it for which the defendants contend. Taking their theory, however, of the statute as correct, this only enhances the extraordinary power which the mortgage of 1874 gave to the mortgagee.

Contrasted with such a summary instrument as that, the ordinary "cut-throat" mortgage, as it is colloquially termed, might well "hide its diminished head." But the sale under the mortgage, if valid, cut out all subsequent purchasers, etc., and related to the date when that mortgage was given. 2 Jones, Mort., sec. 1654. This may, perhaps, furnish one of the reasons why the mortgage was drawn as it was, and why the sale thereunder occurred in the manner it did.

But notice further : This cause was heard in December, 1886, about four years after the sale under the mortgage happened, and there was no testimony that the note for $745, which fell due in twelve months, had ever been paid, or that any interest thereon had ever been paid. Furthermore, the note itself on the twenty-eighth day of January, 1882, was recorded, though the deed· for the land for which the note was given was not acknowledged and recorded till August 18, 1882. Why this should have been done is certainly strange and out of the customary course. Does the curator still let that unsecured note run at interest as he did the one which was secured?

Now, if the transactions aforesaid were fraudulent as to the creditors, then they were void under the statute and no title passed by reason of them ; but, whenever a question of fraud is involved in the issues, then any unusual clause in an instrument, any unusual method of transacting the business, apparently done to give the transaction an air of honesty and good faith, is of itself

a badge of fraud; for, "when the part is overacted, the delusion is broken and the fiction appears." *Comstock v. Rayford*, 12 S. & M. 369; *Baldwin v. Whitcomb*, 71 Mo. 651; *Houts v. Shepherd*, 79 Mo., *loc. cit.* 147; *Hoge v. Hubb*, 94 Mo. 503; Bump on Fraud Convey. 500.

Taking all the foregoing circumstances into consideration, the antecedent fraudulent purpose of G. W. Harrison, and his proclivity to defraud his creditors, manifested in such a variety of ways and for such a number of years, and the recorded participation of his wife Brunetta, therein, with regard to this same land; the extraordinary character of the mortgage deed and the remarkable sale and deed made thereunder, as well as the releasing of the mortgage, and the singular pains taken to record the note after the incumbrance which secured it in its original state was *canceled;* the conclusion has been reached that nothing in that mortgage or any of the subsequent proceedings thereunder offer any barrier to the successful prosecution of the plaintiff's action, and that, therefore, he is entitled to recover the undivided seven-tenths of the south eighty—twenty-one-thirtieths thereof, and that Brunetta Harrison is entitled to three-tenths of the same, nine-thirtieths thereof.

II.   Next for discussion are the facts and circumstances relating to the north eighty, the chain of title to which is as follows:

*First.*  George W. Glass died seized thereof, leaving Rebecca, his widow, who elected to take child's part, leaving one son, David A. Glass, and one daughter, Lucinda.

*Second.*  Rebecca Glass, widow to Geo. W. Harrison, warranty deed, one-third, January 11, 1867.

*Third.*  Geo. W. Glass by administrator to Geo. W. Harrison, A. D., April 4, 1870.

*Fourth.*  Geo. W. Harrison to A. B. Harrison, warranty deed, October 9, 1875.

*Fifth.* Geo. W. Harrison by sheriff to A. B. Harrison, sheriff's deed, October 17, 1876.

*Sixth.* Geo. W. Harrison by sheriff to J. H. Warren, sheriff's deed, October 26, 1877.

*Seventh.* J. H. Warren to Brunetta Harrison, quitclaim, January 24, 1878.

*Eighth.* Geo. W. Harrison by sheriff to J. R. Snell and David A. Glass, sheriff's deed, February 15, 1878. July 16, 1878, suit was brought by Snell and Glass to set aside deeds above, numbered 4, 5, 6 and 7, and on February 24, 1880, decree was rendered setting aside said deeds, divesting the title of the grantees and Geo. W. Harrison to said land and vesting the title thereof in Snell and Glass.

*Ninth.* Lucinda Ray, *nee* Glass, and husband to David A. Glass, warranty deed, one-third, January 29, 1879.

*Tenth.* David A. Glass to Brunetta Harrison, quitclaim, April 19, 1881.

As already disclosed by the record, David A. Glass was entitled by reason of heirship to the undivided one-third of the eighty in question, and his sister Lucinda, to a like proportion of that tract; but G. W. Harrison, by his fraudulent conduct through administration proceedings, obtained the title of the two heirs, which title so far as concerned David A. Glass was set aside on his part by proceedings in equity. This resulted simply in his being restored to that which he had lost, and he was not estopped from claiming that interest by his agreement with Snell already set forth, nor from afterwards purchasing from his sister Lucinda her undivided one-third interest in said eighty. In all probability without any agreement to that effect the law would have divided and apportioned the legal and equitable title and interest of Snell and Glass in accordance with, and in proportion to, the respective amounts of purchase money paid, just as was done by the agreement and by the sheriff's deed; but be that as it may, the sheriff's

deed at any rate fixed the status and proportion of their respective interests.

The evident object and meaning of that agreement was to establish, then and there, just *what* proportion of interest each of the parties acquired as a result of the sheriff's sale and deed, and not to restrict either party from afterwards purchasing whatever further interest in the land they desired to do. Nor was Glass debarred from taking the entire independent interest which he should thus purchase for his own individual benefit. Of course, being a tenant in common with Snell, by reason of their joint purchase, he could not buy in an adverse or outstanding paramount title, so as to oust his cotenant; for such purchase would in equity inure to the benefit of the other tenant in common (*Picot v. Page*, 26 Mo. 398; *Dillinger v. Kelley*, 84 Mo. 561); but this rule would be inapplicable when one tenant in common buys in the independent interest of another tenant in common—similarly situated as himself.

The effect, then, of the purchase of Glass from his sister Lucinda Ray was the acquisition of the undivided one-third of the north eighty. But this was only her equitable title thereto. Such transfer, however, of the property carries with it as an incident the right and equity to set aside the administrator's deed to Harrison on account of the fraud he had practiced in procuring it. *Traer v. Clews*, 115 U. S. 528; *McMahon v. Allen*, 35 N. Y. 403; *Smith v. Harris*, 43 Mo. 557.

And the possession of such an equitable title was a sufficient defense to plaintiff's action so far as the interest of Lucinda extended. As the result of the above facts, Brunetta Harrison through the deed from David A. Glass acquired title to the undivided two-thirds of the north eighty as well as the undivided three-tenths of the undivided one-third of that eighty, making two-thirds plus three-tenths of one-third equal to twenty-three-thirtieths of that tract. Snell by his sheriff's deed

only acquired seven-tenths of the undivided one-third of that tract, equal to seven-thirtieths.

III.   The counsel for Brunetta Harrison was permitted to strike from her answer her claim to a certain portion of the north eighty, as recited in the decree. While it is true that under our practice a *plaintiff* may take a *nonsuit*, certainly a *defendant* cannot do so and thus keep back a portion of the matter in litigation from adjudication.

IV.   It has been deemed unnecessary to enter on any discussion of whether the purchase by Brunetta Harrison of the interest of David A. Glass in the north eighty was made with her own means or not, since whether or not this was the case cannot affect the interests of plaintiff, whose execution spent its force at the sale in February, 1878, and, of course, could not extend to after-acquired property.

Relative to the bill of exceptions not having thereto affixed the seal of the judge, it suffices to say that the statute, section 3635, Revised Statutes, 1879, requires that the bill should be signed by the judge, but not that he should *seal* it.   Besides, the defendants having joined in error, it is quite too late to raise such an objection.   *Baile v. Ins. Co.*, 73 Mo., *loc cit.* 388.

The judgment will be reversed and the cause remanded with directions to the lower court to enter judgment as heretofore indicated after taking an account as to the rents and profits.   All concur.   BARCLAY, J., as to all the legal propositions except as to the remark on the effect of the joinder in error.