WILLIAM A. BARBER v. JOSEPH NUNN et al.,
Appellants.

**Division Two, July 30, 1918.**

1. **JURISDICTION: Lewis County: Circuit Court at Canton.** In view
   of the previous decisions of this court it is *held* that the circuit
   court at Monticello has original jurisdiction of a suit to set aside
   a deed to land lying "east of the range line between ranges 6 and
   7."

2. **FRAUDULENT CONVEYANCE: Purpose: Payment of Consider-**
   ation. The purpose of an ante-dated conveyance by a cotenant,
   against whom suit had been brought by a neighbor for alienating
   his wife's affections, to his two brothers, may be deduced from a
   survey of all the facts connected therewith. And if they show a
   purpose on the grantor's part to put the property beyond the reach
   of an execution which might follow an apprehended judgment, the
   conveyance was fraudulent on his part; and if the grantees ac-
   cepted the deed with a knowledge of his fraudulent purpose, and
   with the intent to assist him in the perpetration of the fraud, it
   was a fraudulent transaction on their part, and the deed should
   be set aside at the suit of the judgment creditor, notwithstanding
   the grantees may have paid the grantor what the property was
   worth.

3. ———: ———: **Facts for Consideration.** And in determining
   whether fraud existed on the part of both grantor and grantee,
   the court is authorized to take into consideration their relation-
   ships to each other, the manner in which their business was con-
   ducted both before and after the deed was made, and the con-
   tinued exercise of authority of the grantor over the property after
   the execution of the deed.

4. ———: **Failure to Testify.** Where the petition directly charges
   fraud against the grantees and grantor of a deed, their unexplained
   failure to appear and testify is to be regarded as a strong circum-
   stance against them, whether they were subpoenaed by plaintiff or
   not.

Appeal from Lewis Circuit Court.—*Hon. Charles D.
Stewart*, Judge.

AFFIRMED.

*Hilbert & Henderson, A. F. Haney,* and *M. C. Schofield* for appellants.

(1) The court had no jurisdiction of the subject of the action, since the cause of action alleged in the petition was for the purpose of setting aside a deed to land situated in that part of Lewis County east of the range line between ranges six and seven, thereby giving the circuit court at Canton exclusive jurisdiction of the action. Laws 1897, p. 60. The use of the word "exclusive" in a statute defining the jurisdiction of a court has the effect of taking away the jurisdiction of every other court. Tackett v. Vogler, 85 Mo. 483; State ex rel. v. County Court, 38 Mo. 408. In such case, the suit is to be regarded as falling within a class of cases over which the court has no jurisdiction, and constitutes a want of jurisdiction over the subject-matter of the suit. Ensworth v. Holly, 33 Mo. 372; State ex rel. v. Muench, 225 Mo. 210. (2) The finding and judgment of the trial court that the deed of conveyance in controversy herein was fraudulently executed, delivered and accepted by the parties thereto is unsupported by the evidence in this cause. "In order for the creditors of the grantor to defeat the deed for fraud it was incumbent on them to prove that it was made by the grantor with a fraudulent intent and that the grantee had notice of such intent when he purchased." Robinson v. Dryden, 118 Mo. 534; Southern Bank v. Nichols, 202 Mo. 320. "In order to defeat the title of a purchaser from one who conveys lands with a fraudulent intent, the vendee must have notice of such intent or participate in the fraud." Henderson v. Henderson, 55 Mo. 535; Amos v. Gilmore, 59 Mo. 543. See also Gust v. Hoppe, 201 Mo. 298. "The rule is that fraud must be proved and cannot be presumed, and, if the facts shown are all consistent with an honest purpose, honesty in the transaction should be inferred." Robinson v. Dryden, 118 Mo. 539; Amos v. Gilmore, 59 Mo. 543; Henderson v. Henderson, 55 Mo. 555. Mere suspicion is not sufficient. The fraud must be

proved as an affirmative fact, and the proof must be of such a positive and definite character as to convince the mind of the chancellor, for it is never presumed, and if the facts shown all consist as well with honesty as with fraud, the transaction should be held honest." Farmers' Bank v. Worthington, 145 Mo. 100; Bump on Fraudulent Conveyances (2 Ed.), p. 584. "Where there is a valuable consideration for a transfer, no matter how trivial or inadequate it may be, the conveyance is not voluntary, and therefore not presumptively fraudulent. In such cases, actual intent to defraud must be found as a fact in order to defeat the conveyance." Commercial Bank v. Kuechner, 135 Mo. App. 63; Robinson v. Dryden, 118 Mo. 539; Ettlinger v. Kahn, 134 Mo. 497; Link v. Hathway, 143 Mo. App. 502.

*J. G. Trimble, E. A. Dowell* and *Richard J. McNally* for respondent.

(1) Circuit courts are created by the Constitution —not by the Legislature—and laws attempting to limit or control their constitutional powers are void. Constitution, art. 6, sec. 22; Chicago Ry. v. Gildersleeve, 219 Mo. 170. The Act of 1897, providing for holding two terms of the Lewis County Circuit Court at Canton, did not create a new court, nor did it interfere with the Circuit then existing, composed of the counties of Lewis, Clark, Knox and Scotland. The words in that act (Sec. 3) "original and exclusive" are "supererogation," and the Act does not deprive the circuit court sitting at Canton of its constitutional jurisdiction. State v. Hall, 189 Mo. 262; State v. Sublett, 191 Mo. 163. The act providing for holding two terms of the court at Canton did not deprive the circuit court sitting at Monticello of its jurisdiction. State v. Vickers, 209 Mo. 30. (2) Defendant Joseph's manifest purpose was to put his property out of the reach of the execution of a judgment which he had reason to believe would be obtained against him. The evidence is that the grantees not only had notice of this purpose, but

actively aided in the details leading to its consummation, for one of the grantees asked the justice to write the quitclaim deed, and to antedate it. And it is also shown that after several years of partnership relations among them, Joseph was suddenly dropped from the firm when a damage suit was instituted against him. Sharp v. Cheatham, 88 Mo. 498; Ridgeway v. Holliday, 59 Mo. 444; Stoffel v. Schroeder, 62 Mo. 147; Stivers v. Horne, 62 Mo. 473; Gust v. Hoppe, 201 Mo. 298. (3) The defendants are brothers, and the fact of such relationship should be considered in connection with other circumstances, on the question of intent to defraud Joseph's creditors. Van Raalte v. Harrington, 101 Mo. 602; Robinson v. Dryden, 118 Mo. 534; First National Bank v. Frey, 216 Mo. 42. (4) The continued possession of real property by the vendor is a circumstance to show fraud. Steward v. Thomas, 35 Mo. 202; Dickson v. Kempinsky, 96 Mo. 252. (5) "Where the petition distinctly charges fraud upon a defendant, his unexplained failure to appear and testify will be regarded as a strong circumstance against him; and this whether subpoenaed by the adverse party or not." Mabary v. McClurg, 74 Mo. 575; Conn. Mut. Life Ins. Co. v. Smith, 117 Mo. 261.

WALKER, P. J.—This is an action brought in the circuit court of Lewis County to set aside a deed. Upon a trial before the court without a jury, there was a judgment for plaintiff, from which defendants have appealed.

This case had its origin in an effort on the part of the plaintiff to secure satisfaction of a judgment theretofore obtained by him against one of the defendants, Joseph Nunn, the facts concerning which are briefly as follows:

On July 27, 1912, plaintiff brought suit against Joseph Nunn, charging him with having alienated the affections of the plaintiff's wife. A few days thereafter, while Joseph Nunn was at work with his brothers, who are the other defendants, he was served with summons in

the alienation suit. The brothers were aware of the nature of this action, and of the service of summons upon him. He took a change of venue to Marion County, where a judgment was rendered against him for $1500, from which he prosecuted no appeal. Execution was issued on this judgment, and certain of Joseph Nunn's property was levied on and sold, and the amount derived therefrom, less the expenses of the proceeding, was credited on the judgment, leaving the greater portion of the judgment unsatisfied. Other than his interest in the land here involved, he had no property. The action at bar was thereupon brought to set aside a deed which had been made by defendant, Joseph Nunn, on the 27th day of August, 1912, to his brothers, Henry and Reason Nunn, the other defendants, to his undivided one-third interest in a certain tract of land which had descended by operation of law to the three brothers from their father. This instrument was a quit-claim deed, importing a consideration of $3333.33, and was written, signed and acknowledged, as shown by the date of its execution, August 27, 1912, or about a month after the institution of the damage suit against Joseph Nunn. In the body of this deed it was, at the request of one of the grantees, ante-dated by the scrivener, as having been written March 4, 1912. The defendants lived together and are jointly associated in their interests and business enterprises. This condition existed before and after the making of the conveyance. They kept joint bank accounts, except as hereinafter stated, and each at all times, entertained a like dominion over the land described in the deed. This conveyance is sought to be set aside on the ground that it was without consideration, and was executed for the purpose of hindering, delaying, and defrauding the creditors of Joseph Nunn; that it was known by the grantees at the time of its execution to have been so made. Defendants offered no testimony at the trial, but in their depositions taken sometime prior thereto, they stated that they had paid Joseph Nunn the full amount named as the consideration in the deed. These

are, in the main, the general facts in regard to the circumstances under which the conveyance was made. Others will be referred to in discussing the sufficiency of the evidence to sustain the judgment of the trial court.

I. The first contention made by the defendants is that the trial court was without jurisdiction to hear and determine this case. Circuit courts are authorized under the law, to be held at two different places in Lewis County, viz., under the general law, at Monticello, the county seat, and at Canton, under a special act, approved March 5, 1897 (Laws 1897, p. 60). This act provides, under Section 3 of same, first: "That the circuit court held at Canton shall have original and exclusive jurisdiction in all civil cases, either in law or equity, arising in that part of Lewis county lying east of the range line between ranges six and seven." A subsequent paragraph of the same section provides that "said court shall have original and concurrent jurisdiction in both civil and criminal cases."

The instant case "arises," to employ the language of the act, "in that part of Lewis county lying east of the range line between ranges six and seven." It is contended, therefore, that it should have been commenced at Canton instead of at Monticello, and, as a consequence, that the court was without authority to hear and determine the same. While the initial paragraph of said Section 3 attempts, according to a literal interpretation of its terms, to confer original and exclusive jurisdiction as therein stated, this court has held that the language as thus employed was an act of supererogation, and that it was not intended thereby to do more than as is provided in a succeeding part of the same section, viz., to give the circuit court held at Canton like jurisdiction within the limit of the statute, to that given the circuit court when held at Monticello; and that the jurisdiction conferred by the general law upon the circuit court at Monticello was

in no wise curtailed by the seeming exclusive provisions of the said Act of 1897. [State v. Vickers, 209 Mo. l. c. 29; State v. Sublett, 191 Mo. l. c. 176; State v. Hall, 189 Mo. l. c. 267.] Other than as attempted to be limited by the Act of 1897, no question is made as to the jurisdiction of the circuit court. This contention of the appellants is, therefore, overruled.

II. There remains only the contention that the evidence did not support the judgment. In addition to the general facts heretofore stated, it appears that within a month of the filing of the suit for damages by plaintiff against the defendant, Joseph Nunn, said deed was made by him to his brothers, the other defendant, for his undivided interest in the land he and they had inherited. This deed, made at the request of one of the grantees, was ante-dated, on the ground that its making had been agreed on sometime before. The scrivener ante-dated it in the body of same, as requested, but inserted in the acknowledgment the actual date of the making and execution of the same, to-wit, August 27, 1912. The consideration he was directed to place in the deed is shown to have been largely in excess of the value of an undivided one-third of the land. No explanation of this excessive valuation is attempted. The evidence as to the manner in which the payment of this consideration was made is in the most general terms, and it was stated in defendants' depositions to have been paid by the surrender of a note by the grantees to Joseph Nunn, theretofore given them; for what purpose no reason is stated, nor is the amount given, except by implication, in that they paid Joseph $1800 in currency, which they had gotten from the sale of a mine at Joplin. After the purported sale of the land, the three brothers continued to occupy, control and cultivate it as before. Subsequent to the making of the deed a party desired to rent a portion of the land, and upon making inquiry of Joseph, in regard thereto, he said: "We have a place which we might rent to you." So far as the record discloses, the defendants neither owned

jointly nor severally any other than the land here involved. Before the bringing of the damage suit the defendants kept a joint bank account, and each checked on same; subsequent thereto, the bank was directed to change the account to that of Reason and Henry Nunn, but despite the omission of Joseph Nunn's name from the account, he checked upon the same, as before, and his co-defendants and the bank recognized his authority so to do. That these amounts were small does not obliterate the fact that ownership was thereby manifested, and that his right to exercise same was approved by those who had the authority to question it. The purpose of this conveyance may be deduced from a survey of all the facts connected therewith. If these show a purpose on the part of the grantor in making this conveyance to put the property conveyed out of the reach of an execution which might follow an apprehended judgment, then it constituted a fraudulent transaction on his part; and if the grantees accepted the deed with a knowledge of the fraudulent purpose of the grantor, and with the intent to assist him in the perpetration of this fraud, notwithstanding they may have paid the grantor what the property was worth, it constituted a fraudulent transaction on the part of both parties, and the sale should be set aside. [Gust v. Hoppe, 201 Mo. l. c. 298.] The triers of the facts so found in this case.

In this finding, we are authorized in presuming that the court, in addition to the force of the affirmative facts themselves, took into consideration, as it was authorized to do, the relationship of the parties, the manner in which their business was conducted before and after the deed, and the continued exercise of authority of Joseph Nunn over the property after the deed was made, in determining as to the existence of fraud. [First National Bank v. Frey, 216 Mo. l. c. 42; Robinson v. Dryden, 118 Mo. 534; Van Raalte v. Harrington, 101 Mo. 602; Sharp v. Cheatham, 88 Mo. 498; Ridgeway v. Holliday, 59 Mo. 444; Stoffel v. Schroeder, 62 Mo. 147; Stivers v. Horne, 62 Mo. 473; Dickson v.

Kempinsky, 96 Mo. 252; Stewart v. Thomas, 35 Mo. 202.] In addition,—where a question of fraud is involved, any unusual clause in an instrument or unusual method of conducting business apparently done to give the transaction an air of honesty and good faith is of itself a badge of fraud. [State to use v. O'Neill, 151 Mo. 1. c. 67; Snell v. Harrison, 104 Mo. 158; Baldwin v. Whitcomb, 71 Mo. 651.] We have adverted to the fact · that defendant failed to take the stand and offer any evidence in their own behalf. Where, as in this case, the petition directly charges fraud upon defendants, their unexplained failure to appear and testify will be regarded as a strong circumstance against them; and this, whether subpoenaed by the adverse party or not. [Marbary v. McClurg, 74 Mo. 575; Conn. Mut. Life Ins. Co. v. Smith, 117 Mo. 261.]

Under the state of facts, therefore, disclosed by this record, we have reached the conclusion that the evidence is ample to show that the transaction was fraudulent, and we, therefore, decline to interfere with the finding · of the trial court.

This results in an affirmance of this judgment, and it is so ordered. All concur.