PRODUCE EXCHANGE BANK OF KANSAS CITY, a Corporation, and PEOPLES BANK OF NORTH KANSAS CITY, a Corporation, by R. W. HOLT, Commissioner of Finance of the State in Charge of the Liquidation Thereof, v. FRANK D. WINN, MARY E. WINN, and FRANK D. WINN, Trustee, GEORGE W. OSBORNE, Trustee, and JANET O. WINN, Trustee, as Liquidating Trustees of the WINN-WOOD DEVELOPMENT COMPANY, a Corporation, Defendants, MARY E. WINN, Appellant.—133 S. W. (2d) 419.

Division Two, November 22, 1939.

*Lawson & Hale* and *Maurice H. Winger* for appellant; *Winger, Reeder & Barker* of counsel.

*Frank G. Harris, Lakenan M. Price, Ralph L. Alexander* and *Frank G. Harris, Jr.,* for Peoples Bank of North Kansas City; *Harris, Price & Alexander* of counsel.

*Ike Skelton, Glenn R. Donaldson, Joseph Koralchik, Daniel L. Brenner* and *Phineas Rosenberg* for Produce Exchange Bank of Kansas City; *Rosenberg & Brenner* of counsel.

BOHLING, C.—This, broadly put, is an action by creditors to set aside transfers of real estate. It was instituted by Produce Exchange Bank of Kansas City, a corporation (herein sometimes designated plaintiff), on September 17, 1937, against Mary E. Winn (appellant here) and Frank D. Winn, and Frank D. Winn, Trustee, George W. Osborne, Trustee, and Janet O. Winn, Trustee, as liquidating trustees of the Winnwood Development Company, a corporation. The venue

was changed from Clay to Lafayette County. On March 18, 1938, Peoples Bank of North Kansas City, through the Commissioner of Finance (herein sometimes designated intervenor), leave having been obtained, filed its intervening petition. The decree below was for plaintiff and intervenor. Mary E. Winn, grantee, prosecutes this appeal. The principal events leading to her acquisition of title may be outlined as follows:

Frank Winn, in 1911 and 1912, acquired what is known in the record as the Winnwood Beach property, consisting of one hundred sixty-seven acres of land, in Clay county, Missouri. He, thereafter, formed a corporation known as the Winnwood Development Company of which he had full charge and was the owner, transferred the property to said corporation, developed the property into a pleasure resort and an amusement park around lakes situate thereon, and platted a part of the property into lots.

Arrangements were made for the construction of the amusement park for the 1928 park season. November 15, 1927, $45,000 was borrowed, secured by a deed of trust on the property, from Edward Aaron and was used in making improvements, additions, and the construction of the amusement park. In said construction an additional indebtedness of $50,000 due the Thompson Lumber Company, or A. O. Thompson, was incurred and secured by a second deed of trust on the property. Lot 26 of Block 4, of said property, was not covered by said deeds of trust.

A corporation, Winnwood Amusement Company, was organized to operate the park and leased the property from the Winnwood Development Company. The Amusement company let concession rights to concessionaires; and was responsible for the lights and boardwalk of the park.

Frank Winn's father left no will. He was survived by Geraldine C. Winn, his widow, and his children Mary E., James C. and Frank D. Frank Winn received his share of the inheritance, approximately one-third.

It appears that the installation of roller coaster facilities was insisted upon by the concessionaires. The Winnwood Roller Coaster Company was organized with a capital stock of $35,000. Geraldine C. Winn borrowed $5000 from intervenor bank in the spring of 1928 and purchased $5000 in stock or stock and bonds of the roller coaster enterprise.

During the 1931 park season unpaid light bills totaling $1,660, due the Kansas City Power and Light Company, accumulated; and Geraldine C. Winn signed a note or notes evidencing said indebtedness.

Geraldine C. Winn died May 11, 1932. She bequeathed $1.00 to her son Frank; and after requesting the payment of certain specific legacies, devised and bequeathed the residue of her estate to her daughter, Mary Winn, and son James Winn, "share and share alike,"

with the proviso that neither of said residuary beneficiaries dispose of the "joint property, either by sale, mortgage, gift or in any other like manner, unless both parties agree, by a written contract  . . ."

The Kansas City, Clay County and St. Joseph Railway Company's right of way traversed the property. This interurban railway ceased operation and the right of way reverted to the Winnwood Development Company. In consideration of the Development company dedicating the right of way for road purposes, certain outlying lands, approximately thirty acres, described as "swamp lands and frog ponds," covered by the Aaron and Thompson deeds of trust were released from said deeds of trust.

On December 13, 1934, the Winnwood Development Company conveyed, by warranty deed, Lot 26 of Block 4, aforesaid, to Mary Winn for the recited consideration of $1 and other considerations; and in a separate deed of the same date, for a like recited consideration, conveyed said outlying "swamp lands and frog ponds" to Mary Winn.

The "operating companies" owed Frank Winn back salary (amount not recalled by Mr. Winn) and he acquired some bathing suits and towels from the Amusement company. Mr. Aaron, in the spring of 1935, started to foreclose his deed of trust. Upon certain creditors threatening receivership, it was deemed advisable to operate the property for the 1935 park season, foreclosure was stopped, and in consideration, among other things, of an extension of the time for payment of the Aaron indebtedness to October 1st, the Development company executed a surrender of possession to Mr. Aaron. Mr. Aaron and Mr. Thompson organized a corporation, which leased the property from Mr. Aaron and operated the park during the 1935 season. In December, 1934, Frank Winn also had transferred to Mary Winn the bathing suits and towels, aforesaid, valued by Mr. Winn at $2,500. Mr. Aaron contracted with Mary Winn that for the use of "said personal property" for the 1935 season, she, in the event he foreclosed, should have the option of receiving from him a conveyance of approximately thirty-five acres of additional outlying "swamp lands and frog ponds" or the sum of $1500. Foreclosure was had in December, 1935, and, at the direction of Mr. Aaron, title was taken in the name of A. L. Taylor, who subsequently transferred title to the A. K. B. Realty Company, a corporation owned and controlled by Mr. Aaron's family. Appellant's brief states that Mr. Aaron, pursuant to appellant's election conveyed said additional "swamp lands and frog ponds" to appellant; and the record discloses that the A. K. B. Realty Company, on January 31, 1936, conveyed described parts of the park to appellant for the recited consideration of $1 and other considerations. Frank Winn testified the consideration supporting this transfer was the bathing equipment.

Appellant's brief states that appellant purchased from Mr. Aaron, for $30,000, the property he acquired under the foreclosure proceed-

ings. .The record discloses a deed dated "June 1, 1936," conveying "the park proper from A. K. B. Realty Company to Mary Winn;" and that certain personal property also passed from the Realty company to her. No cash changed hands in this transaction. The purchase price was secured by a deed of trust back on the property conveyed and also Lot 26 of Block 4, aforesaid.

On June 17, 1936, fire destroyed a considerable portion of the improvements. Miss Winn received $40,000 from the insurance companies. Of said sum $27,500 was applied in compromise of the $30,000 deed of trust. She also realized approximately $3600 for the sale of damaged lumber, and other amounts (not disclosed) from the sale of other items.

The Produce Exchange Bank of Kansas City recovered a judgment for $6616.64 against the Winnwood Development Company, Frank Winn and others, on March 19, 1937; and also, on November 18, 1937, against Frank Winn and others for $7174.58. The Peoples Bank of North Kansas City was placed in the hands of the State Finance Commissioner on December 26, 1932, and on December 1, 1936, recovered a judgment against Winnwood Development Company and Frank Winn for $9566.86. Each judgment was recovered on an indebtedness incurred prior to the transfers to appellant hereinbefore mentioned. Executions issued on said judgments were returned *nulla bona.*

The Winnwood Amusement Company ceased to function in 1934; and prior to the institution of the instant action the charter of the Winnwood Development Company had been forfeited.

Appellant asserts the Winnwood Development Company or Frank Winn had the right to prefer appellant over other creditors and that the considerations supporting the transfers were sufficient. Respondent asserts the transfers were had in furtherance of a plan by Frank Winn to hinder, delay and defraud the creditors of the Winnwood Development Company and his creditors, and that they were not supported by any considerations or by considerations so inadequate as to make the transfers voidable upon attack by creditors.

Respondents have moved to dismiss the appeal on the ground appellant's brief fails to comply with our rule 15 in that appellant's statement is not a fair statement of the facts of the case, and that appellant's assignments of error and points and authorities fail to distinctly state the errors or points relied on for reversal.

The core of respondents' attack on appellant's statement is that said statement presents only appellant's evidence and appellant's version of the questioned transactions and totally ignores respondents' evidence and respondents' version of said transactions.

Appellant's statement with respect to controverted fact issues, states that Frank Winn borrowed money from his mother and, after her death, from his sister and brother and invested the same in the

Winnwood Development Company, Frank's corporation; that appellant furnished Frank most of his food requirements from the Winn farm after the mother's death; that appellant laundered bathing suits and towels for many years on holidays and Sundays at Frank's request; that the mother guaranteed the Kansas City Power and Light Company's bill and said bill was settled by the payment of $1000 out of her estate; that Frank persuaded his mother to advance him and guaranteed to her the repayment of the $5000 heretofore mentioned as having been borrowed by his mother from intervenor; and that her estate settled said note by the payment of $4500. It states that Lot 26 of Block 4, aforesaid, was a part but not an indispensable part, of the property and that the transfers of December, 1934, by the Winnwood Development Company (of said Lot 26 and of the first conveyance of "swamp lands and frog ponds") and by Frank Winn (of said bathing suits and towels) were made in partial payment of the indebtedness owed appellant by Frank Winn and said Winnwood Development Company.

There is no indication in appellant's statement of any impeachment of appellant's witnesses or any controverting of appellant's evidence with respect to the claimed indebtedness due appellant, and no indication of any evidence of any plan on the part of Frank Winn to hinder, delay or defraud his creditors or the creditors of the Winnwood Development Company and appellant's acquiescing thereto and participating therein.

Appellant's statement thus furnishes no intimation of any evidence in this voluminous record justifying the ruling of the trial court in favor of respondents; and, from what is hereinafter set forth, we think it manifest appellant has not presented a fair or clear and concise statement of the facts involved in this review of an action in equity. Section 1060, R. S. 1929, Mo. St. Ann., p. 1341; Mo. Sup. Ct. Rule 15. Sims v. Hydraulic Press Brick Co., 323 Mo. 447, 449, 19 S. W. (2d) 294, 295, in dismissing an appeal, stated: "It [the statement] is, primarily, in aid of an immediate, accurate, complete, and unbiased understanding of the facts of the case, without which there can be no proper administration of justice. A statement that does not fairly present the facts not only fails to accomplish this purpose. It is in fact pernicious to the extent that it conveys in the first instance a false, distorted, or imperfect impression as to the facts of the case." Consult State ex rel. v. Shain, 333 Mo. 235, 62 S. W. (2d) 711; Kirby v. Balke, 306 Mo. 109, 117, 266 S. W. 704, 707[1]; and see Carter Mtr. Co. v. Miller's Garage & C. Co., 226 Mo. App. 553, 45 S. W. (2d) 101, 102[1].

The chancellor may have given consideration to the following among other matters in this voluminous record.

George Osborne, the secretary of the Winnwood Development Company during its existence, testified that Frank Winn, his brother-in-

law, in May or June, 1934, and in subsequent conversations, disclosed that he planned to "cut out" all of his and the Winnwood Development Company's creditors that he could, but he would have to deal with Mr. Aaron; that nobody knew much about appellant's business and he believed he could make a safe showing that he and the Winnwood Development Company owed her a "lot of money" and this could not be disproved by the creditors, and the property could be deeded to her; that he, Frank Winn, would take bankruptcy and eventually have the property back in his own name; that, as his plan developed, he conceived of a number of "hooks" or "screws" to exert on Mr. Aaron in securing the conveyance of the property after foreclosure to his sister, and among these were the following: that Lot 26 of Block 4 separated the amusement park proper from the bath house, merry-go-round and some small concessions; that he could drain water into the frog ponds in such a manner as to lower the level of the water in the main lake and damage or destroy its value as a bathing resort; that he could prevail upon friends who owned adjoining land to institute suits for damage by reason of the existing method of sewage disposal or put any other owner to considerable expense to remedy the situation, *et cetera.*

Frank Winn, at the instant trial, testified that at the time of the transfers in December, 1934, he and the Winnwood Development Company owed appellant approximately $11,000, and that none of this indebtedness appeared on the books of the Development Company "because they are current bills." He claimed the $11,000 embraced the following: A guaranty to his mother to repay the $5000 borrowed from intervenor in 1928; and obligation to pay the $1660 delinquent electric light bills; $750 paid John Morton, since deceased, by appellant for 450 days' labor on the property; $967 due appellant for feeding two teams at the Winn farm for 967 days; $600 due appellant for laundry services performed on Sundays and holidays for ten years prior to 1935; and for provisions furnished Frank's household from the Winn farm, estimated at fifty cents a day. Of these as briefly as we may.

The only indebtedness on the books of the Development company due appellant, according to the secretary of the company, was an item of $500 for "farm rent" which was "balanced up." He testified Frank Winn never mentioned any indebtedness due appellant in the conversations between them in the summer of 1934 with respect to cutting out the creditors. Frank and Mary Winn seemingly did not recall the $500 item appearing on the books of the company. Statements of the financial condition of the Winnwood Development Company to plaintiff or intervenor, as of April 2, 1934, February 29, 1932, and December 31, 1929, disclose no indebtedness due Geraldine C. Winn or appellant. In connection with the adjustment of the fire loss, Frank Winn, on October 19, 1936, stated under oath he owed appellant $2000; "anyhow that much, maybe more."

Appellant testified that Frank Winn discussed his financial affairs with her; that she knew of his financial affairs, knew he was in debt; that she sent no bill for the laundry work because Frank couldn't pay it; that Morton worked at her house for fifteen years; that she paid him no salary; that she paid him all through, didn't divide it, and had no idea how much she paid him. She kept no account of the laundry item. The record is silent as to her keeping any account of the other items of indebtedness claimed due. She made no request for payment. Consult First National Bank v. Vogt, 344 Mo. 284, 126 S. W. (2d) 199, 201(1); Cole v. Cole, 231 Mo. 236, 256(a) 257(d), 132 S. W. 734, 741(a, d).

After the mother's death appellant and James Winn mortgaged the home place, applied the money to the debts of the estate and on April 22, 1935, settled the $5000 item by a payment of $4500 and the $1660 delinquent electric light bills by a payment of $1000. Frank Winn testified that he had verbally guaranteed to his mother that the Winnwood Development Company would repay the $5000. Appellant was executrix of her mother's estate and the inventory and appraisal of said estate, over appellant's affidavit as executrix, sworn to on June 9, 1932, did not list either of said items among the assets of said estate. The $5000 was invested in the roller coaster undertaking and the mother received $5000, par value, of the stock of said corporation—a corporation separate from the Winnwood Development Company. She later transferred this stock to appellant. She and appellant received the dividends on said stock. The officer of the bank handling the transaction testified that at the time the mother borrowed the $5000 she stated she was borrowing it for the purpose of making an investment in some enterprise in the park. If the Winnwood Amusement Company were obligated to maintain the electric lights in the park, the delinquent light bills were not an obligation of the Winnwood Development Company. Appellant's statement these items were omitted from the inventory of the mother's estate because they would have cluttered up the estate is of little probative weight in view of her affidavit to a court of record as to the completeness of said inventory. A reasonable conclusion from their omission would be that these obligations, if ever existent, had been adjusted or waived.

The secretary of the Winnwood Development Company knew of no laundry service performed by appellant, although he was in constant attendance at the resort. If the Winnwood Amusement Company owned the towels and bathing suits and transferred them to Frank Winn for unpaid salary, the chancellor may have considered this claimed indebtedness, if existent, an obligation of the Amusement company subsequent to its organization in 1928.

Frank Winn's testimony of net earnings of $35,000 to $40,000 in 1928, and again in 1929, $10,000 in 1930, and of earnings meeting

the expenses of operation subsequent thereto is not consistent with appellant's statement of his inability to pay certain obligations claimed due her.

Appellant's brief makes light of the strategic value of said Lot 26 and "frog ponds." After foreclosure, Mr. Aaron had a prospective purchaser for the property at $50,000. Frank Winn testified he talked to this person about ten days prior to the transfer to appellant and told him about the importance of Lot 26 of Block 4 and that *"we* were negotiating for the place for my sister but if *we* didn't get it, *we* would have to pump water out of this lake deeded to her north of the park to fill these lakes ['frog ponds'] and in pumping this out it would lower the water in the bathing lake." "If he had bought it, and come out there, there would have been a lot of trouble and *I* thought it best to tell him." "There is no question I wanted to get it back for my sister. Q. It had everything to do with it, didn't it? A. No. I would have sold the property after getting *my* price." Appellant testified "I don't know values"; that the fact that Lot 26 was a key lot was widely discussed in the family; that it partially separated the bath house from the bathing beach and other parts of the park; that it made her a suitable person and pretty nearly the only one who could handle the deal because it divided the property and no one else would want the property; and that it was a very valuable thing to help her get that property. Mr. Aaron's attorney was asked if Frank Winn did not have Aaron "out on a limb where you had to deal with him or nobody else. A. I came to the conclusion that the best market for the property—. Mr. Hale. I object to that. You mean Mary Winn. A. Why I was talking to Frank and he was talking before Mary and that was the conclusion I reached from the conversation." It thus appears that the interurban right of way and the bathing suits and towels permitted appellant to acquire outlying lands having a peculiarly strategic influence on the market value of the park property and with Lot 26 of Block 4 permitted appellant through Frank Winn to chill a prospective sale for $50,000 of the park property and through negotiations by Frank Winn to take title to said park property in consideration of a $30,000 note secured by a deed of trust without any cash changing hands.

The record not only sustains appellant's testimony that it was her habit to talk things over with her brother Frank before she did anything but also that Frank Winn was the "man of action" bringing about each of the transfers appellant obediently awaited. A chancellor might find that the transfers of January and June, 1936, were tainted with the infirmities attaching to the transfers of December, 1934. [Benne v. Schnecko, 100 Mo. 250, 257, 13 S. W. 82, 84; Woodard v. Mastin, 106 Mo. 324, 331(I), 361, 17 S. W. 308, 309(1), 318. See Matz v. Miami Club Restaurant (Mo. App.), 108 S. W. (2d) 975, 979[5].]

Frank Winn paid $37,400 for the property—$200 an acre for eighty-seven acres and $250 an acre for eighty acres. Thirty acres were platted into lots and about 150 lots were sold. We think it reasonable to assume the cost price of the unsold land at $30,000. Improvements subsequently erected thereon were destroyed by fire. Appellant received $40,000 from the insurers and in excess of $3600 from the sale of damaged property. She retains the bathing equipment valued by Frank Winn at $2500. (The last two items are not involved in this litigation.) This totals $76,100 or $46,100 more than the $30,000 note and deed of trust. Under the mother's will James Winn shared equally with appellant as a residuary beneficiary and, so far as developed by this record, had an equal right to the payment of the claimed items due, if due, the mother and arising from the use of the Winn farm. James Winn gave no testimony in the case. Munford v. Sheldon, 320 Mo. 1077, 1085, 9 S. W. (2d) 907, 810[10], states: "The acceptance of property in excess of the amount due renders the entire conveyance void as against creditors." [New England Nat. Bk. v. Montgomery (Mo.), 192 S. W. 941[2]; Lomax & Stanley Bk. v. Peacher (Mo.), 30 S. W. (2d) 44, 45[4]; Cole v. Cole, 231 Mo. 236, 257(e), 132 S. W. 734, 741(e).]

Additional observations might be made.

"Parties do not usually enter into a scheme to hinder, delay or defraud creditors, and later when called into court to explain their transaction, openly admit the facts. Such has not been the experience of either the bench or bar. So that, after all, in these cases we are forced to take the facts and circumstances as they appear, and from them undertake to draw rational and reasonable inferences and conclusions. When we have done that we have met the full measure in cases involving the question of fraud." [St. Francis Mill Co. v. Sugg (Banc), 206 Mo. 148, 157, 104 S. W. 45, 47.]

The trial chancellor had the witnesses before him. If the testimony of Frank Winn and appellant taxed his credulity with respect to the factual issues upon which the case should turn and he gave credence and weight to the testimony of George Osborne, corroborated by Mrs. Osborne, and facts and circumstances outside of the oral testimony, this record does not disclose that his conclusions on the merits were against the weight of the evidence and erroneous. [Aude v. Aude (Banc), 28 S. W. (2d) 665, 668(1, 2); Gilbert v. Smiley (Mo.), 114 S. W. (2d) 1029, 1032[3]; Long v. Von Erdmannsdorff (Mo.), 111 S. W. (2d) 37, 39(1); McKinney v. Hutson, 336 Mo. 867, 876(1), 81 S. W. (2d) 951, 955(1). Consult, among others, Farmers Bank v. Handly, 320 Mo. 754, 9 S. W. (2d) 880; Munford v. Sheldon, 320 Mo. 1077, 9 S. W. (2d) 907; Barber v. Nunn, 275 Mo. 565, 205 S. W. 14.]

Respondents, as they insist, are entitled to have the appeal dismissed. It is so ordered. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.