250 S.W.2d 982 (1952)
WIPFLER et al.
v.
BASLER et al.
No. 43048.
Supreme Court of Missouri, Division No. 2.
July 14, 1952.
Motion for Rehearing or to Transfer to Denied September 8, 1952.
*984 J. Grant Frye, Cape Girardeau, for appellants.
Roberts & Roberts, Farmington, for respondents.
Motion for Rehearing or to Transfer to Court en Banc Denied September 8, 1952.
BOHLING, Commissioner.
Action contesting the will of Charles Kohm. The petition charged unsound mind, undue influence and improper execution. The case was submitted on the sole issue of testator's mental capacity. Contestants perfected an appeal to the St. Louis Court of Appeals from the judgment, upon the verdict of the jury, in favor of proponents. They present issues covering the evidence, instructions and argument.
The cause was properly transferred here, as title to real property passed under the will. Proffer v. Proffer, 342 Mo. 184, 114 S.W.2d 1035, 1037[2]; Higgins v. Smith, 346 Mo. 1044, 144 S.W.2d 149, 151[2]; Norwood v. Norwood, 353 Mo. 548, 183 S.W.2d 118[1]. Contestants' (plaintiffs-appellants) "Motion to Retransfer" is overruled.
Proponents (defendants-respondents) filed a motion to dismiss the appeal, Rule 1.15, in the Court of Appeals on the ground contestants had failed to comply with Rule 1.08. Notwithstanding said motion, contestants have submitted the case in this court on the brief they filed in the Court of Appeals. They have filed no suggestions in opposition to proponents' motion to dismiss. Rule 1.08 provides that (a) the brief for appellant shall contain (1) a concise statement of the grounds upon which the jurisdiction of the review court is invoked; (2) a fair and concise statement of the facts without argument; (3) the points relied on, which shall specify the allegations of error, and the citation of authorities thereunder, with the three authorities principally relied on first cited; and (4) an argument. (b) The statement of facts shall be relevant to the questions presented for determination; and (c) the statement of facts and argument shall have specific page references to the transcript on appeal.
The "Statement" in contestants' brief presents contestants' view of the facts and does not cover the facts favorable to proponents and upon which the jury evidently returned the verdict. This is not proper. The statement is primarly to afford an immediate, accurate, complete and unbiased understanding of the facts of the case, and one which does not fairly present the facts is pernicious to the extent it conveys in the first instance a false, distorted, *985 or imperfect impression of the facts. Walker v. Allebach, 354 Mo. 298, 189 S.W.2d 282; Produce Exchange Bank v. Winn, 345 Mo. 420, 133 S.W.2d 419, 422[1,2]; McHenry v. Wabash R. Co., Mo.App., 216 S.W.2d 538.
We have experienced difficulty in following the twenty "Points and Authorities" in contestants' brief. Many are abstract in nature and we are left to speculate as to the specific matter constituting the alleged error. The "Argument" consists of two printed pages. References to pages of the transcript are not found in the argument or in many of the points and authorities. As stated in Carver v. Missouri-Kansas-Texas R. Co., Mo.Sup., 245 S.W.2d 96, 102 (citing authority), Rule 1.08(a) (3) contemplates, as did our former rules, a particularization in statement of the points relied upon and the citation of authorities to the specific point to which they apply. Metropolitan Properties Co. v. Rideout, 346 Mo. 787, 142 S.W.2d 1055, 1056. The rules involved are not only to aid the court in its work but also to guard against the disturbance of judgments except upon a full and fair presentation of the whole record necessary to a determination of properly presented errors. Our study of contestants' brief and the record indicates that some of the issues are sufficiently developed to call for a ruling.
Charles Kohm owned a farm near Ste. Genevieve, Missouri. Soon after his son Ferdinand married, about 1920, Mr. and Mrs. Kohm moved to Ste. Genevieve, and later, in 1946, to St. Louis, Missouri. Ferdinand continued to operate his father's farm. Charles Kohm died in his eightieth year on July 2, 1949. He was survived by Alice Kohm, his widow, and his five children; namely, Flora B. Wipfler, Ferdinand C. Kohm, Ruby M. Basler, Agnes R. Roth and Virginia L. Samson.
Mr. Kohm, after preliminary provisions unimportant here, gave, in item "Third" of his will, his house and lot (3751-3753 Laclede Avenue) in the City of St. Louis, Missouri, to Ruby M. Basler in fee simple; conditioned, however, upon Ruby paying Flora B. Wipfler $1,500, Agnes R. Roth $1,500, and Virginia L. Samson $1,500, within one year after the date of his death; and he gave, in item "Fourth," his farm "of 180 acres," in Ste. Genevieve County, Missouri, to Ferdinand C. Kohm in fee simple; conditioned, however, upon Ferdinand paying Ruby M. Basler $1,250, Flora B. Wipfler $1,250, Agnes R. Roth $1,250, and Virginia L. Samson $1,250, within one year after the date of his death. In item "Fifth," he willed all the rest, residue and remainder of his estate to his four daughters, naming them, share and share alike. In item "Sixth," he appointed Vincent Shock, a nephew, executor of his estate.
Flora B. Wipfler, Virginia L. Samson and Agnes R. Roth instituted this action against Ruby M. Basler, Ferdinand C. Kohm, Alice M. Kohm, and Vincent Shock.
Proponents established by the attesting witnesses the due execution of the will and its attestation on June 28, 1948, and testator's soundness of mind at the time of its execution. There was no substantial evidence contra on the issue of due execution. Also, there was no substantial evidence of undue influence having been exerted upon testator. Contestants make no point in their brief that a submissible case was made on either of said issues.
There was evidence from which a jury might find that testator was mentally incompetent at the time of executing the will. We need not state the evidence in detail. Contestants' evidence, as we read the record as a whole, embraced testator's acts and conduct from 1943, when he was in a hospital in St. Louis for several days (August 31, 1943, to September 4, 1943) up to the time of his death (July 2, 1949). His condition at the hospital was diagnosed: "Arteriosclerosis, general and cerebral," without "complications," and "no change" in condition upon discharge. The hospital records carry the notation that he was "irrational" at times, and at other times he was "rational," particularly at the time of his release from the hospital. Dr. Robert G. Warner, who attended Mr. Kohm at the hospital but had not seen him after his release, testified in answer to a hypothetical question that in his opinion Mr. Kohm was not of sound mind for a considerable period of time. There was testimony *986 from lay witnesses that Mr. Kohm was of unsound mind at the time of executing the will. Quite a portion of contestants' evidence was to the effect Mr. Kohm was in a bad condition physically.
Proponents adduced substantial evidence from disinterested witnesses that Mr. Kohm was of sound mind. Dr. Clyde E. Kane, of St. Louis, first became acquainted with Mr. Kohm in 1947 and had several occasions to examine him. He testified that Mr. Kohm was of sound mind up to the time he had a cerebral hemorrhage on June 29, 1949, and that up to that time Mr.Kohm was mentally alert.
Contestants' first two points relate to their witness Alice Kohm, whom they joined as a party defendant. They say they should have been permitted to cross-examine this witness under Section 491.030, RSMo 1949, V.A.M.S., and that letters written by her (which are not set forth in the transcript filed by contestants) should have been admitted in evidence as "admissions." Section 491.030 provides that a party "may compel any adverse party, or any person for whose immediate and adverse benefit such action or proceeding is instituted, prosecuted or defended, to testify as a witness in his behalf, in the same manner and subject to the same rules as other witnesses; provided, that the party so called to testify may be examined by the opposite party, under the rules applicable to the cross-examination of witnesses."
Alice Kohm was the widow of testator. Although joined as a party defendant, Mrs. Kohm was not a beneficiary under testator's will. In the circumstances she was not an "adverse party," and contestants' shift of naming her as an opposing party upon the record is not sufficient to make her interests adverse to contestants or to make the statute applicable. Consult Pratte v. Coffman, 33 Mo. 71, 75; Harris v. Harris, 25 Mo. 567. Furthermore, the cases state the right to cross-examine an adverse party under § 491.030 is not absolute but rests in the sound discretion of the trial court. Wilcox v. McKinney, Mo.App., 68 S.W.2d 741, 744[5]. See Lewis v. St. Louis Independent Packing Co., Mo.Sup., 3 S.W.2d 244, 250[10]. Mrs. Kohm testified she was up in age, was eighty years old, and tried to keep things in her mind. Our reading of contestants' examination of this witness indicates the court permitted the examination to take a wide range and, in instances wherein the witness exhibited hesitancy, allowed counsel to cross-examine. Letters written by the witness were exhibited to her and she was questioned, apparently thoroughly, on the portions counsel wished to stress. The letters are not before us and there is nothing of record upon which to predicate error in their exclusion, if error.
Contestants say "the court unduly restricted contestants in the examination of their witnesses by ruling that the questions propounded" were leading and suggestive (Point III); that the court excluded "much of contestants' evidence on the ground the witnesses were stating only conclusions" (Point IV); that contestants' witnesses "had related sufficient facts upon which to base their opinions" (Point V); and that the court erred in excluding evidence of testator's condition on the ground of "remoteness" (Point IX). Each point fails to name the witness or witnesses, if the particular point relates to the same specific issue throughout, or give the page or pages of the transcript where the alleged error occurred. The argument does not aid the presentation. These "points" may be good as assignments of error but they do not comply with Rule 1.08. If we refer to contestants'"Statement" (which the rule does not contemplate) in an effort to particularize, we find references to different pages and groups of pages of the transcript, but we are not required to search out the record and speculate as to just what particular matter counsel had in mind. Guidicy v. Guidicy, 361 Mo. 1127, 238 S.W.2d 380, 383[1], and cases cited; Metropolitan Properties Co. v. Rideout, 346 Mo. 787, 142 S.W.2d 1055, 1056; Peak v. Taubman, 251 Mo. 390, 437(IX), 158 S.W. 656, 670[15]; Meierotto v. Thompson, 356 Mo. 32, 201 S.W.2d 161, 165[4]. An examination of the record discloses that some of the questions asked were leading and others called for and some answers *987 stated conclusions as distinguished from the facts involved, and in some instances, upon further questioning, the facts were adduced. We think the court was liberal enough in the admission of testimony as to testator's mental condition at different times.
We find no evidence of probative value of record establishing that testator had executed another will a week prior to the execution of the will in question and the point (VI) that facts and circumstances attending the writing of the other will were admissible in evidence is without foundation upon which to rest.
Contestants say (Point VII) "conversations had by the witnesses in deceased's presence at the time of the writing of the two alleged wills" (the evidence established the writing of only one will) and testator's silence were admissible as showing testator's mental incompetency; and also complain (Point XX) of the court sustaining an objection to counsel commenting in the argument "that, at the scrivener's, the deceased was not shown to have said anything." What we have said heretofore with reference to Point III applies to Point VII; and it is not developed in connection with any specific conversation that there was a duty on the part of testator to speak. 31 C.J.S., Evidence, § 294, page 1057, notes 30-32. Harry J. Petrequin, an attorney of Ste. Genevieve, Missouri, wrote Mr. Kohm's will and also witnessed it. We shall not detail his testimony. It was to the effect that Mr. and Mrs. Kohm came to his office in the morning of June 28, 1948, to have the will written; that only the three of them were present in his office; that, in preparing the will, the only thing he had "to go by was the statement that Mr. Kohm made as to what he wanted in the will"; that Mr. Kohm told him the names of his children, how he wanted the property disposed of, and who should receive it; that they waited while he drafted the will; that he read the will to them and Mr. Kohm stated it met with his approval; that the three then went to the Ste. Genevieve Bank and were taken into the directors' room by G. R. Haunert, cashier of the bank, who also witnessed the will, where the will was executed by Mr. Kohm and witnessed by Mr. Petrequin and Mr. Haunert. Mrs. Kohm, who was placed on the stand by contestants, testified Mr. Kohm "made his own will." The competent evidence does not sustain contestants' points.
The record does not support contestants' point (VIII) that the court excluded conversations between testator and the priest who was called when it was thought testator was dying. The court excluded testimony that was hearsay, voluntary statements of the witness, and also testimony that was of a confidential nature or privileged.
Contestants claim error in excluding evidence of the value of the farm given to Ferdinand C. Kohm and the city real estate given to Ruby M. Basler (Point X). The sole inquiry of record was made of witness Oscar Samson, the husband of contestant, Virginia L. Samson, and was directed to the value of the farm. Proponents objected on the ground the qualification of the witness had not been established and that the value of the real estate was immaterial. The objection was sustained. Witness testified that after he married he went into "public work"; when asked about the size of the farm, he answered: "I guess a hundred and thirty-five acres"; when asked if he were acquainted with the general value of real estate in that community, he answered: "Well, I think so." We read in 68 C.J., Wills, 459: "On the issue of the reasonableness of a will, evidence is admissible as to the value of the testator's estate and of property not disposed of by the will." 57 Am.Jur., Wills, p. 108, n. 2. Factors other than the value of the property often control a testator's disposition of his estate. "As a general rule of evidence, the question of the qualification of a witness to give opinion evidence is vested largely in the sound discretion of the court (Ternetz v. St. Louis Lime & Cement Co., Mo.Sup., 252 S.W. 65[71, 10]); and the rule obtains with full force in a condemnation proceeding." State ex rel. State Highway Commission v.
*988 Craighead, Mo.App., 65 S.W.2d 145, 149[7]. Love v. United States, 8 Cir., 141 F.2d 981, 984[11]; 32 C.J.S., Evidence, § 545, page 305, note 16. It is stated in 32 C.J.S., Evidence, § 545, page 285, note 39: "However, for a witness to be qualified, it must be made to appear that he has had, and utilized, means superior to those available to the jurors or to men in general, for forming an intelligent opinion." The record does not establish that the witness possessed such qualifications and, although the court apparently excluded the evidence on other grounds, we think the instant record does not establish reversible error. Egger v. Egger, 225 Mo. 116, 123 S.W. 928, 937(5); Gates v. Dr. Nichols' Sanatorium, 331 Mo. 754, 55 S.W.2d 424, 428[3]; McNulty v. Atlas Portland Cement Co., Mo.App., 249 S.W. 730, 735[9].
We are in general accord with contestants' statements in Points XI to XVII, inclusive. They relate to issues of an abstract nature that contestants made a submissible case and that specified evidentiary facts are for the consideration of the jury in determining a testator's testamentary competency or incompetency. The court submitted contestants' issue of testator's mental incapacity to the jury and the jury found against contestants. The points mentioned do not establish error.
Contestants make the assertion (Point XVIII) that giving instructions 4 and 5 constituted error on the ground that they "were argumentative, were abstract statements of law, and were cautionary." Passing to the merits of the instructions without taking into consideration the sufficiency of the presentation of the point, see Carver v. Missouri-Kansas-Texas R. Co., Mo.Sup., 245 S.W.2d 96, 102[11]; Wahl v. Cunningham, 332 Mo. 21, 56 S.W.2d 1052, 1060[18], we find an instruction similar to instruction 4 was considered not erroneous in Schultz v. Schultz, 316 Mo. 728, 293 S.W. 105, 108 (instruction 14), 110[7]; and instruction 5 applied the third paragraph of approved instruction A of Gardner v. Turk, 343 Mo. 899, 123 S.W.2d 158, 161(A), 162, to the facts of the instant case.
During the trial several disinterested witnesses, who knew Mr. Kohm during the last years of his life, testified that, in their opinion, he was of sound mind, but Ruby M. Basler, one of the proponents, was not called to the stand. Counsel for contestants directed the jurors' attention to this fact in his argument and stated he "was going to ask Ruby some questions not only about those fellows, but." An objection was interposed on the ground defendant had a right to put her on the stand, had placed one of the defendants on the stand, and that Mrs. Basler had been present in the courtroom and her deposition was on file. The objection was sustained on the ground she was "available to either side; she could have been subpoenaed by either side." This is the only issue not hereinbefore discussed.
"Available," in the sense here used, does not mean merely available or accessible for service or compulsory processby subpoena. The question whether a witness is available to a party depends primarily upon the relationship existing between the witness and the party or the witness' personal interest in the outcome of the litigation, that is, whether it would be natural to expect the witness to testify in favor of one party and against the other. Blick v. Nickel Saving, Inv. & Bldg. Ass'n, Mo.Sup., 216 S.W.2d 509, 512[1, 2]; Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W.2d 506, 513[18-20]; Cooper v. Metropolitan Life Ins. Co., Mo.App., 94 S.W.2d 1070, 1073[3]; Chavaries v. National Life and Accident Insurance Company, Mo.App., 110 S.W.2d 790, 794[11, 12]. However, in the instant case the deposition of Ruby Basler was on file. Mrs. Basler was a beneficiary under the will and occupied a different position from defendant Alice Kohm. State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S.W.2d 907, 909[2], mentions that a litigant has the right to examine an adverse party under the rules of cross-examination and compel him to answer either in court or on deposition. Section 491.030, RSMo 1949, V.A.M.S. If there were any admissions by Mrs. Basler against interest in the deposition *989 they were available to contestants in the trial and could have been, but were not, shown in evidence. The burden of proving the due execution of the will and of testator's soundness of mind at the time of its execution was on the proponents, and upon such proof being made the burden shifted to contestants to go forward and adduce substantial evidence that testator was of unsound mind at the time of the execution of the will. Weaver v. Allison, 340 Mo. 815, 102 S.W.2d 884, 885, 110 A.L.R. 672, citing cases; Dowling v. Luisetti, 351 Mo. 514, 173 S.W.2d 381, 385[1, 2, 6]; Williams v. Lack, 328 Mo. 32, 40 S.W.2d 670, 671[1]; Hennings v. Hallar, 347 Mo. 827, 149 S.W.2d 338, 342[7, 9]; Foster v. Norman, 346 Mo. 850, 143 S.W.2d 248, 249; Patton v. Shelton, 328 Mo. 621, 40 S.W.2d 706, 708[2]; Annotation, 76 A.L.R. 373. In these circumstances it would have been more effective and fairer for contestants to have offered in evidence any admissions by Mrs. Basler against interest in the deposition than for counsel to comment upon her failure to testify and argue therefrom for inferences that her testimony would have been unfavorable to proponents. The argument alone would not constitute proof and under the instant record we consider any inference unfavorable to proponents to be of such slight value as to not establish prejudicial error requiring the granting of a new trial. § 512.160, subd. 2, RSMo 1949, V.A.M.S. Consult Blick v. Nickel Saving, Inv. & Bldg. Ass'n, Mo.Sup., 216 S.W.2d 509, 512[1, 2].
The judgment is affirmed.
WESTHUES and BARRETT, CC., concur.
PER CURIAM.
The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.
All concur.